**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-4251-17T3

LILIA ORELLANA,

     Petitioner-Respondent,

v.

CHABAD LUBAVITCH JEWISH
CENTER OF MONROE,

     Respondent-Appellant.

_____

Argued September 10, 2019 – Decided October 9, 2019

Before Judges Yannotti and Firko.

On appeal from the New Jersey Department of Labor and Workforce Development, Division of Workers' Compensation, Claim Petition No. 2017-030632.

David Hoffman argued the cause for appellant (Wysoker Glassner Weingartner Gonzalez & Lockspeiser, PA, attorneys; David Hoffman, on the briefs).

Robert Blair White, III argued the cause for respondent (Garces Grabler & LeBrocq, PC, attorneys; Robert Blair White, III, on the brief).

PER CURIAM

Respondent Chabad Lubavitch Jewish Center of Monroe (Center) appeals from orders entered on March 26, April 16, and May 7, 2018 by the Division of Workers' Compensation. On March 26, the judge of compensation converted a pretrial conference to a motion for temporary disability and medical benefits. The April 16 order granted petitioner Lilia Orellana's motion and awarded her temporary disability and medical benefits. The May 7 order dismissed, without prejudice, a claim for benefits against the Rabbinical College of North America (RCA). We affirm.

I.

Orellana, an illegal alien, worked for the Rabbi Eliezer Zaklikovsky and his wife, Chanie Zaklikovsky, off-the-books as a domestic helper, and asserts the Center was her employer. Orellana also claims that the Center employed the Zaklikovskys and allowed them to live in a residence owned by the Center in Monroe.[1]

---

[1] Four petitions were filed in this matter: one against the Center and its carrier, Church Mutual Insurance; one against the Center as an uninsured entity; and one against the Zaklikovskys individually. The petition against the Center as an uninsured entity was amended to include the Zaklikovskys and Avraham Altein in their corporate capacities and is the subject of this appeal.

A-4251-17T3

On August 23, 2017, during the course of her employment, Orellana slipped and fell on stairs at the Zaklikovsky home. Unable to stand, Orellana was transported by ambulance, ordered by the Zaklikovsky's daughter, to an emergency room for treatment. Orellana sustained a meniscal tear to her left knee, as well as lumbar and cervical herniations. She testified that the emergency room personnel would not treat her injuries because they were work-related and her employer "had to be notified." The Center did not maintain workers' compensation insurance at the time of petitioner's accident.

Thereafter, Orellana amended her petition to assert claims against the Zaklikovskys as the Center's owners and principal operators. The Center moved to join the RCA as a party, claiming RCA was Orellana's employer, and that RCA should provide coverage for her injuries since the Center was uninsured.

The judge of compensation granted an adjournment early on in the proceedings to allow the parties to resolve the coverage dispute. At the March 5, 2018 hearing, counsel for respondents requested an adjournment so that their new counsel could get "up to speed." Noting his frustration, the judge of compensation stated:

> I'm thinking of an entirely new thought and I say it on
> the record that if anyone wants to look at the record they
> can see a [j]udge who is trying to be considerate of the

fact that there is a legislative intent of the law to provide a speedy and efficient remedy.

. . . .

The words of our courts were carefully selected when they declared speedy before efficient. Respectfully[,] speedy is my emphasis.

. . . .

I'm expediting this case. I'm exercising judicial prerogative.

. . . .

This [p]etitioner took care of [the Zaklikovsky's] child. The [p]etitioner needs care. I don't sense enough caring from the [R]abbi and his wife. They obviously chose to respectfully delay today. They relied upon a fine veteran attorney to come into court just to respectfully[,] on my impression[,] give them cover for today.

At the March 12, 2018 hearing, no counsel appeared on behalf of the Zaklikovskys and the judge of compensation admonished their counsel of record for not appearing.

Orellana testified at the March 26, 2018 hearing that Ms. Zaklikovsky would not approve medical care, told her to apply for "Charity Care," and denied she fell at the Zaklikovsky's home. Orellana also testified following the accident, the Rabbi told her "[she] could not file a claim because [she] was illegal and that maybe [i]mmigration would take [her] away." Despite her

4

attempts at seeking medical treatment, Orellana was refused care because "she hurt herself at work," and the healthcare providers she consulted with advised her the matter "needs to be handled through worker's compensation."

Orellana underwent treatment at Capital Health Clinic until it was discovered her injuries were work-related. After undergoing an MRI[2] of her left knee at another facility, Orellana only received physical therapy for her knee injury and not her back pain because that was all she could afford.

The parties agreed to continue the hearing on April 16, 2018. However, the Zaklikovskys did not appear on that date even though they agreed, by way of a consent order, to appear and testify in lieu of being deposed as previously ordered. The judge of compensation ordered the Center to pay "for all necessary [and] related treatment" required by Orellana as arranged with the Rothman Institute. She was awarded $9520 in temporary disability benefits, and a portion of her attorney's fees. Orellana underwent knee surgery on April 19, 2018, and continued physical therapy.

At the May 7, 2018 hearing, counsel for RCA's worker's compensation carrier advised the judge of compensation the coverage issue could not be determined as of that date. Based upon a lack of evidence and testimony from

---

[2] Magnetic Resonance Imaging.

the parties, the judge of compensation dismissed the claim against RCA without prejudice. Moreover, since Orellana filed a direct claim petition against RCA, the Center's motion to join RCA became moot. The Zaklikovskys did not appear at the May 7 or May 15, 2018 hearings. Orellana has been unable to return to work due to her injuries.

On appeal, the Center argues that the judge of compensation erred by (1) accelerating the pretrial conference to a motion for temporary disability and medical benefits, in violation of N.J.A.C. 12:235-3.2(a); (2) granting medical treatment and retroactive benefits to Orellana because she failed to submit an affidavit or certification and medical report as required by N.J.A.C. 12:235-3.2(b)(2); (3) closing the record prematurely as to the potential claims against RCA, thereby depriving the Center of worker's compensation coverage under N.J.S.A. 34:15-87; and (4) denying the Center of its due process rights because the Center was given insufficient time to retain separate counsel for co-respondents. We disagree and conclude there is sufficient credible evidence in the record to support the judge of compensation's findings.

II.

This court generally gives "substantial deference" to agency determinations. Lindquist v. City of Jersey City Fire Dep't, 175 N.J. 244, 262

6

(2003) (citations omitted). "In workers' compensation cases, the scope of appellate review is limited to 'whether the findings made could reasonably have been reached on sufficient credible evidence present in the record, considering the proofs as a whole, with due regard to the opportunity of the one who heard the witnesses to judge of their credibility.'" Ibid. (quoting Close v. Kordulak Bros., 44 N.J. 589, 599 (1965)). This court must defer to the judge of compensation's factual findings and legal determinations "unless they are 'manifestly unsupported by or inconsistent with competent[,] relevant[,] and reasonably credible evidence as to offend the interests of justice.'" Ibid. (quoting Perez v. Monmouth Cable Vision, 278 N.J. Super. 275, 282 (App. Div. 1994)).

This court will not substitute its judgment for that of the judge of compensation, even if the court would reach a different result when considering the facts anew. Lombardo v. Revlon, Inc., 328 N.J. Super. 484, 488 (App. Div. 2000); see also Perez v. Capitol Ornamental, Concrete Specialties, Inc., 288 N.J. Super. 359, 367 (App. Div. 1996) (stating that an appellate court should consider whether the judge of compensation's decision "could reasonably have been reached on sufficient credible evidence in the record, considering the proofs as a whole, giving due regard to his expertise in the field of workers' compensation and his opportunity of seeing the witnesses and evaluating their credibility.").

> However, where the focus of the dispute is not on credibility but, rather, alleged error in the trial judge's evaluation of the underlying facts and the implications to be drawn therefrom, our function broadens somewhat. Where our review of the record "leaves us with the definite conviction that the judge went so wide of the mark that a mistake must have been made," we may "appraise the record as if we were deciding the matter at inception and make our own findings and conclusions."
>
> [Manzo v. Amalgamated Indus. Union Local 76B, 241 N.J. Super. 604, 609 (App. Div. 1990) (quoting C.B. Snyder Realty v. BMW of N. Am., 233 N.J. Super. 65, 69 (App. Div. 1989)).]

We disagree with the Center that the judge of compensation erred by accelerating the pretrial conference to a motion for temporary disability and medical benefits in violation of N.J.A.C. 12:235-3.2(a), which provides a motion for temporary disability and/or medical benefits

> shall evidence that petitioner is currently temporarily totally disabled and/or in need of current medical treatment. Where only past periods of temporary total disability and/or medical expenses are claimed by petitioner, such issues should be presented at pretrial for resolution or trial and not by motion under this section.

The Center argues that by permitting Orellana to testify on the same day the case was listed as "pretrial no adjournment," the fundamental aspects of a motion under N.J.A.C. 12:235-3.2(a) were violated.

8

When the Division [of Workers' Compensation] has received a notice of motion for temporary disability and/or medical benefits filed . . . it shall list the motion for a hearing before a [j]udge of [c]ompensation peremptorily within [thirty] days of the filing of the motion. Motions for medical and/or temporary benefits shall commence and continue in a timely manner subject to the scheduling constraints of the Division. Said scheduling may be accelerated as ordered by the Director, the [s]upervising [j]udge of the vicinage, or the [j]udge of [c]ompensation to whom the case is assigned.

[N.J.A.C. 12:235-3.2(e) (emphasis added).]

But the judge of compensation informed the parties at the March 12, 2018 hearing that he would elicit testimony from Orellana at the March 26, 2018 hearing:

[I]n order to give extraordinary due process, we're putting the parties on notice by requiring the [p]etitioner's testimony on the 26th. The [r]espondents can hear the testimony of the [p]etitioner on the 26th. They can hear the testimony of the woman who cared for their child. They can hear her testimony. They can watch. They can listen[]. They can learn and they can understand why this woman is crying out for the [c]ourt's assistance in securing her treatment.

Moreover, the judge of compensation noted that the Zaklikovskys' counsel was noncompliant with court ordered obligations, and the judge was "troubled by the threat" made by the Rabbi to Orellana about potential immigration

9

consequences and the "chilling effect" it could have on the case. The judge of compensation aptly concluded that Orellana . . ."deserves a speedy and efficient remedy with the provision of medical treatments and temporary disability benefits . . . ." The disposition of the judge of compensation is wholly consistent with the statutory scheme.

The Center argues that it was denied due process by the judge's decision to accelerate the matter. "[A] workers' compensation judge is not strictly bound by rules of evidence and procedure but must respect and insure due process and fundamental rights of litigants." Waters v. Island Transp. Corp., 229 N.J. Super. 541, 547 (App. Div. 1989). As the Supreme Court observed, "[d]ue process is not a fixed concept . . . but a flexible one that depends on the particular circumstances. Fundamentally, due process requires an opportunity to be heard at a meaningful time and in a meaningful manner." Doe v. Poritz, 142 N.J. 1, 106 (1995) (internal citations omitted).

Orellana testified in support of her motion on March 26, 2018, and the parties agreed to continue the hearing on April 16, 2018. All parties were represented by counsel. The judge ordered an expedited transcript from the first hearing date. The Zaklikovskys failed to appear for the April 16, 2018 proceeding even though they agreed to entry of a consent order that stated they

would appear and testify. No rebuttal testimony or evidence was presented on their behalf.

The judge of compensation properly found that the Zaklikovskys did not defend the motion. Therefore, there is sufficient, credible evidence to support the judge of compensation's order awarding relief to Orellana. We are unpersuaded by the Center's argument that it was deprived of the right to control Orellana's treatment. The judge of compensation properly concluded the Center relinquished its right to do so and enabled the judge to decide the issue. The Center's argument wholly lacks merit and the judge of compensation did not abuse his discretion in accelerating the motion for benefits.

The award under N.J.A.C. 12:235-3.2(h) authorizes a judge of compensation to "order one carrier or employer to pay benefits without prejudice and subject to an order of reimbursement if another party is later held liable for such benefits." Therefore, there was no prejudice to the Center.

In granting Orellana's request for retroactive, temporary disability benefits, and ongoing benefits, we likewise discern no error. The record shows the judge of compensation determined Orellana was "super credible" and a "hard[-] working[,] remarkable lady [who] provided quality care to [the child] and the [R]abbi and his wife." Although the Center now contends its due process

rights were denied by the hearing going forward, it presented no rebuttal evidence. Furthermore, in this appeal, the Center has not identified any aspect of the proceedings that it was unable to challenge. Instead, respondents simply chose to ignore the judge's orders and not appear at the hearing.

### III.

Lastly, the Center argues that the judge of compensation improvidently denied its motion to implead RCA, leaving the Center without recourse on its indemnification claim. We reject this argument.

First, the Center's motion to implead was denied because RCA was not given notice as required by Rule 4:8-1.[3] N.J.A.C. 12:235-3.6(c) provides: "It shall be the responsibility of the moving party to give notice of any hearing of the motion to the party sought to be impleaded."

---

[3] Rule 4:8-1 requires a party to

> serve a summons and third-party complaint, together with a copy of plaintiff's complaint, upon a person not a party to the action who is or may be liable to defendant for all or part of the plaintiff's claim against defendant and may also assert any claim which defendant has against the third-party defendant involving a common question of law or fact arising out of the same transaction or series of transactions as the plaintiff's claim. The third-party plaintiff shall serve a copy of the third-party complaint upon the plaintiff[.]

Second, the Center's motion to implead was denied without prejudice. After hearing testimony, the judge of compensation found there was no nexus between Orellana's employment and the RCA. Since the motion was denied without prejudice, the Center can re-file it if evidence of RCA's involvement is shown.

We conclude that the Center's remaining arguments—to the extent we have not addressed them—lack sufficient merit to warrant any further discussion in a written opinion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-4251-17T3