725 A.2d 690 (1999)
319 N.J. Super. 373
James R. RASO, Petitioner-Appellant,
v.
ROSS STEEL ERECTORS, INC., Respondent-Respondent.
James R. Raso, Individually and on behalf of all other Workers Compensation Lien Payees similarly situated, Plaintiff-Appellant,
v.
Harleysville Insurance Company of New Jersey, a Workers Compensation Line Payee, Harleysville Mutual Insurance Company, Huron Insurance Company, Defendant-Respondent.
Superior Court of New Jersey, Appellate Division.
Argued November 17, 1998.
Decided March 12, 1999.
*691 David H. Weinstein (Weinstein Kitchenoff Scarlato & Goldman) of the Pennsylvania bar, admitted pro hac vice, Philadelphia, PA, for petitioner-appellant (Westmoreland, Vesper & Schwartz, West Atlantic City and Mr. Weinstein, attorneys; R.C. Westmoreland and Robert S. Kitchenoff, Philadelphia, PA, on the brief).
Lance J. Kalik, Morristown, for defendant-respondent Harleysville Insurance Companies (Riker, Danzig, Scherer, Hyland & Perretti, attorneys; James S. Rothschild, Jr., of counsel; Mr. Kalik and Beth Ann Stemmler, on the brief).
Before Judges LONG, WEFING and CARCHMAN.
The opinion of the court was delivered by CARCHMAN, J.A.D.
These appeals require us to determine whether expenses incurred by a workers compensation carrier for the services of a rehabilitative nurse are recoverable under N.J.S.A. 34:15-40 (Section 40) as medical expenses. We conclude that such expenses are so recoverable if the carrier demonstrates that such expenses are necessary to provide "medical, surgical and other treatment... as shall be necessary to cure and relieve the worker of the effects of the injury." N.J.S.A. 34:15-15 (emphasis added) (Section 15). In this case the workers compensation judge (WCJ) concluded that plaintiff "benefit[ted] economically as well as medically by the rehabilitative nurse." We conclude the WCJ's finding that the rehabilitative nurse's expenses were compensable as medical expenses did not address the standard required by Section 15. Accordingly, we reverse and remand to the Division of Workers Compensation (the Division) to determine if such expenses were "necessary to cure and relieve the employee of the effects of the injury."
While the experts who testified before the WCJ disagreed as to the nature of the rehabilitative nurse's services, the underlying facts and procedural history are not in dispute. Plaintiff James Raso was seriously injured in an employment-related accident on August 11, 1992, while in the employ of defendant Ross Steel Erectors, Inc. Defendant Harleysville Insurance Company of New Jersey (Harleysville) was Ross Steel's workers compensation carrier at the time of the accident. When plaintiff was hospitalized at the Cooper Hospital Trauma Center, Harleysville assigned Angelina Giordano, a rehabilitative nurse, to plaintiff's case. Giordano was an employee of American International Health and Rehabilitation Services, Inc. (AIHRS), which was under contract with Harleysville to provide management services for Harleysville's insureds by coordinating their medical treatment. Prior to assigning Giordano, Harleysville sought and received authorization for Giordano's services from plaintiff's brother and attorney, Frank J. Raso, Esquire. On July 22, 1993, plaintiff initiated a third party negligence action against CMC Equipment Rental, and others, for damages he sustained as a result of the accident (third party lawsuit). Plaintiff again retained his brother to represent him in the third party lawsuit. Because of jurisdictional issues, the third party action proceeded in Pennsylvania while the workers compensation action proceeded in New Jersey.
Plaintiff obtained a settlement before trial in the third party lawsuit in an amount exceeding $2,000,000. As part of its workers compensation obligations, Harleysville provided $187,163.08 in medical benefits, $42,691.21 in temporary disability payments and $30,000 in permanent disability payments to plaintiff. Thereafter, pursuant to Section 40, Harleysville sought a lien on plaintiff's recovery in the third party lawsuit for a sum equal to the benefits paid. Included with the lien was $13,306.43 paid by Harleysville for Giordano's *692 expenses.[1] Plaintiff refused to pay the portion of the lien attributable to the services of Giordano, the rehabilitation nurse, arguing that her services were not necessary for his medical treatment. It is this expense which generates the issue before us.
The parties could not resolve the dispute, and on February 17, 1995, plaintiff filed a class action complaint against Harleysville in the Chancery Division. Count one of the complaint alleged that Harleysville improperly asserted the costs of "rehabilitation nurse services" in its workers compensation lien, violating Section 40 of the workers compensation lien statute. The remaining counts of the complaint alleged violations of the consumer fraud act (count two); common law fraudulent and negligent misrepresentation (count three); negligence per se (count four); common law breach of the duty of good faith and fair dealing (count five); and unjust enrichment (count six). The complaint sought an order certifying the case as a class action, a judgment declaring Harleysville's conduct to be in violation of the workers compensation act, injunctive relief, and compensatory and punitive damages.
Judge Gibson first transferred count one of the complaint to the Division and dismissed that count in the Chancery Division. He opined that the Division had the necessary expertise to address the issue of whether the lien should properly include the cost of Giordano's services. Additionally, he dismissed the consumer fraud count. After the WCJ determined that the lien included Giordano's services and in response to a motion by Harleysville in the Chancery Division action, Judge Gibson, without a review of the merits of the workers compensation determination but consistent with its holding, dismissed the remaining counts of the complaint. Plaintiff appeals both the Division's order and the Chancery Division order. We consolidated the appeals for consideration.
In determining the issue of whether the cost of the rehabilitative nurse is recoverable by Harleysville, we first identify the services provided by Giordano and Harleysville's purpose in retaining Giordano. We quote from the detailed findings made by the WCJ:
Petitioner was injured in a compensable accident of 8/11/92, and taken to the trauma care unit at Cooper Hospital, Camden, New Jersey. Three days later, the Harleysville Insurance Company assigned a rehabilitation nurse through the services of AIHRS. That nurse was Angelina Giordano, an RN. She spoke to Frank Raso, Esquire, Petitioner's attorney and brother, and received permission to get involved in Petitioner's case. Ms. Giordano performed many services for the Petitioner, including but not limited to: securing around-the-clock nursing, arranging transportation, scheduling medical exams, attending team meetings at Mediplex, arranging therapy programs, and arranging family counselling. The record is replete with these types of services. The Court found the rehab nurse Angelina Giordano to be credible.
Also testifying for Harleysville was Joyce Baker, a RN in charge as the rehabilitation manager and supervisor of rehabilitation. She explained the goals of the company when utilizing rehab services. "Harleysville certainly realized the benefit of having somebody working with our claimant to enhance their recovery, so that really was the main program. Also recognizing in that some instances, the impact of the injury and the number of medical professionals and facilities that have to be dealt with are numerous."
As part of her job, Baker had occasion to review the bills submitted by AIHRS, an approved company at the time in the Raso case. AIHRS complied with Harleysville's guidelines for billing which included allowance for travel expenses incurred by rehabilitation consultants because Harleysville places importance on human contact. Their guidelines also allow billing for report writing by the rehab consultants.
Baker also explained that rehabilitation specialists do not provide "hands on" medical care. She explained that rehabilitation *693 nurses use their training to assess situations and communicate "to implement, readjust, to see if they are meeting the needs, to re-evaluate, to enhance, to coordinate." She further testified that she does not keep records of her time and none of her time is figured into any Workers' Compensation lien. Further, rehabilitation consultants do not discuss costs with the claimant especially in a case like this where there is no knowledge that there is even going to be a third party claim. That has nothing to do with what the rehab nurse is going to do. The Court found Joyce Baker to be credible.
John McCabe is a claims supervisor for Harleysville Insurance Company, and he testified that rehabilitation nurses are only used in cases of a very serious nature. The severity of the injury is the only criteria. He testified that the charges for rehabilitation services must be reported to the Compensation Rating and Inspection Bureau as a loss incurred. He further testified that cost containment is a concern on all files and does not impact on the assignment of a rehabilitation consultant. There is an adjuster assigned to the case whose job it would be to determine if temporary benefits should be continuing or if the patient is able to return to work. Whether there is a possibility of a third party recovery is never a criterion for assigning a rehabilitation consultant. The Court found John McCabe to be credible.
Plaintiff challenged Harleysville and contested the necessity for and purpose of Giordano's services. We again refer to the finding of the WCJ:
[Petitioner] called Mrs. Lori Machlus as their expert rehabilitation specialist. Without going into details, she basically testified the services of the rehab nurse were not medically necessary. Although somewhat beneficial to Petitioner, the services were primarily beneficial to the insurance company. The Court found her overall testimony to be incredible, especially her opinion that rehabilitation nursing was not a medical benefit inuring to the Petitioner but only to the insurance carrier, for cost containment.
The Court found the reasoning for her opinion to be illogical. For instance, she felt the services of the rehab nurse in arranging for around-the-clock nursing care not to be medically necessary, since a social worker could have done it; the services of the rehabilitation nurse in checking with doctors and arranging examinations could have been done by an adjuster; scheduling medications and therapy could have been done by his wife; arranging transportation could have been done by a family member; securing family counselling could have been done by a doctor; avoiding duplication of treatment and unnecessary treatment was just for the benefit of the insurance company.
Harleysville countered with testimony from one of the treating physicians:
Dr. A. Howard Levin was deposed. He treated James Raso for his injuries following the accident. Dr. Levin is a neurologist. His testimony was that the rehabilitation nurse was very helpful in supplying information, completing the history of treatments, doctors and various injuries. She was very active in arranging tests and examinations that he wanted for the patient. When he suggested a treatment plan for physical therapy and psychiatric attention, the rehabilitation nurse followed up with his recommendations. He opined that the rehabilitation nurse was extremely helpful in this case because the patient not only had physical problems, he also had emotional problems and cognitive dysfunction, so that he was unable to provide many details regarding his history, and she was able to fill in those details. The Court found Dr. Levin to be credible.
Finally, the WCJ concluded:
Petitioner benefits economically as well as medically by efforts of the rehabilitation nurse, especially in a case where there is a lien as here. By coordinating treatments, office visits, prescriptions and other treatments, she prevents duplication of effort [and provided] a chronological treatment agenda rather than a haphazard agenda; a focal point for information concerning [the] patient and his treatment, his rehabilitation or lack thereof, and need for further *694 or different treatment, all of which [are] of primary benefit to the patient.
The cost of a rehabilitation nurse is in fact medical expenses, and the carriers are permitted to include such costs in their lien under N.J.S.A. [34:15-40].
The On appeal of the Division's decision, plaintiff raises a number of issues including a challenge to the factual findings and sufficiency of the record. We reject plaintiff's initial argument regarding the facts and sufficiency of the record as we recognize that the scope of our review of an error in factfinding is limited. On review, the Appellate Division will only decide whether the findings made could reasonably have been reached on "sufficient" or "substantial" credible evidence present in the record. We must consider the proofs as a whole and give due regard both to the ability of the factfinder to judge the credibility of witnesses and to the agency's expertise where such expertise is pertinent. Close v. Kordulak Bros., 44 N.J. 589, 599, 210 A.2d 753 (1965); see Dennery v. Board of Educ., 131 N.J. 626, 641, 622 A.2d 858 (1993) (holding that appellate courts will not reverse an agency decision unless it is "arbitrary, capricious or unreasonable or it is not supported by substantial credible evidence in the record as a whole"); Nachtigall v. New Jersey Turnpike Auth., 302 N.J.Super. 123, 139, 694 A.2d 1057 (App.Div.) (noting that the Appellate Division is "not at liberty to disregard administrative fact-finding amply supported by the record"), certif. denied, 151 N.J. 77, 697 A.2d 549 (1997); De Angelo v. Alsan Masons, Inc., 122 N.J.Super. 88, 89-90, 299 A.2d 90 (App.Div.) (Appellate review is limited "to a determination of whether the findings of the judge of compensation could reasonably have been reached on sufficient credible evidence present in the whole record, after giving due weight to his expertise in the field and his opportunity of hearing and seeing the witnesses."), aff'd o.b., 62 N.J. 581, 303 A.2d 883 (1973); see also State v. Locurto, 157 N.J. 463, 724 A.2d 234 (1999). Thus, if substantial credible evidence supports an agency's conclusion, a court may not substitute its own judgment for the agency's even though the court might have reached a different result. Clowes v. Terminix Int'l, Inc., 109 N.J. 575, 588, 538 A.2d 794 (1988) The burden of showing that the agency's action was arbitrary, unreasonable or capricious rests upon the appellant. Barone v. Department of Human Servs., 210 N.J.Super. 276, 285, 509 A.2d 786 (App.Div.1986), aff'd, 107 N.J. 355, 526 A.2d 1055 (1987). Our careful review of the extensive record convinces us that the WCJ's findings were well-supported by the record.
We recognize, however, that the issue is not resolved by the factual determinations since it is the application of these facts to Section 40, when read in pari materia to Section 15, that ultimately determines whether the costs of the rehabilitation nurse should be allowed. That issue then becomes a legal determination and our reviewing role is different. While we accord respect to the agency's expertise, Mayflower Sec. Co. v. Bureau of Sec., 64 N.J. 85, 93, 312 A.2d 497 (1973), ultimately the interpretation of statutes is a judicial, not administrative, function, and the court is not bound by the agency's interpretation. Ibid. See also R & R Marketing, L.L.C. v. Brown-Forman Corp., 307 N.J.Super. 474, 482, 704 A.2d 1327 (App.Div.), certif. granted, 156 N.J. 384, 718 A.2d 1213 (1998).
Section 40(b) imposes a lien in favor of the workers compensation carrier against the proceeds of a third-party recovery obtained by an injured worker. The lien secures reimbursement of "the medical expenses incurred and compensation payments theretofore paid to the employee," less the lienor's share of attorneys' fees not in excess of 33 1/3%, plus "expenses of suit" not in excess of $200. N.J.S.A. 34:15-40(e). The statute does not define the term "medical expenses." Section 15, however, provides some guidance in determining what constitutes reimbursable medical expenses. It defines the type of treatment an employer, or its insurance carrier, must provide to an injured worker. Under Section 15, carriers are required to provide "medical, surgical and other treatment... as shall be necessary to cure and relieve the worker of the effects of the injury." N.J.S.A. 34:15-15 (emphasis added). Limited *695 case law is available interpreting Section 15.
In Squeo v. Comfort Control Corp., 99 N.J. 588, 494 A.2d 313 (1985), the Supreme Court addressed the question of "whether the construction of a self-contained apartment attached to the home of an injured worker's parents may constitute `medical, surgical or other treatment ... necessary to cure and relieve' under N.J.S.A. 34:15-15 of the Workers' Compensation Act." Id. at 590, 494 A.2d 313. We had affirmed the order of the Division and found that the apartment for the injured worker, who was a quadriplegic, constituted "treatment" within the purview of the act because independent living would relieve the petitioner's mental depression. Id. at 595, 494 A.2d 313.
The Court granted certification and noted:
Although this Court has liberally construed the Act to promote its beneficent purposes, we have always imposed the limitation that no expense incurred may be recovered that is not shown to be reasonable and necessary by sufficient competent medical evidence.
The services must be shown by competent medical testimony to be such as are reasonable and necessary for the particular patient, taking into consideration his individual condition and need.
[Id. at 599, 494 A.2d 313 (quoting Howard v. Harwood's Restaurant Co., 25 N.J. 72, 93, 135 A.2d 161 (1957)).]
Additionally, the Court commented with approval that other jurisdictions
have been generous in allowing as "treatment" not only the cost of medical and hospital services, but also of necessary incidentals such as transportation, apparatus, and even nursing care furnished by a member of claimant's own family.
[Ibid. (citing 2A. Larson, Workmen's Compensation Law § 61.00 (1983).)]
The Court noted that the relief provided by other jurisdictions governed by similar workers compensation statutes "has not been limited to physical amelioration but has encompassed psychological relief as well." Id. at 603, 494 A.2d 313. Ultimately, the Court found "that competent medical testimony exists on this record to hold that the construction of the apartment addition was reasonable and necessary to relieve Squeo of his severe mental depression." Id. at 605, 494 A.2d 313. Therefore, in satisfaction of Section 15, the Court found "sufficient credible evidence on the record to establish that construction of the apartment [was] necessary to cure and relieve the mental depression caused by Squeo's work-related injury." Id. at 606, 494 A.2d 313. Most significantly, the Court stressed that "in determining what is reasonable and necessary, the touchstone is not the injured worker's desires or what he thinks to be most beneficial. Rather, it is what is shown by sufficient competent evidence to be reasonable and necessary to cure and relieve him." Ibid.
Recently, we addressed the criteria for determining whether certain treatment is "necessary" under N.J.S.A. 34:15-15. In Hanrahan v. Township of Sparta, 284 N.J.Super. 327, 665 A.2d 389 (App.Div.1995), certif. denied, 143 N.J. 326, 670 A.2d 1067 (1996), we noted that "[c]ompetent medical evidence" establishing that the treatment proposed will cure or relieve the effects of the injury, must be presented to demonstrate that such treatment is reasonably necessary. Id. at 334, 665 A.2d 389. This court held
that even in non-total disability cases N.J.S.A. 34:15-15 provides for continued treatment, whether or not labeled as "palliative," as long as there is a showing by competent medical testimony that the treatment is reasonably necessary to cure or relieve the effects of the injury.

[Id. at 336, 665 A.2d 389.]
Squeo and Hanrahan instruct us that a showing of "reasonableness" or "necessity" standing alone is not enough to compel treatment. In order to compel an employer or a workers compensation insurance carrier to pay for the treatment of an injured worker, it must be shown that such treatment is "reasonable" and "necessary" to cure or relieve the injury of the worker. A mere showing that the injured worker would benefit from the added treatment is not enough. Clearly, the petitioner in Squeo would have benefitted from the construction of the apartment, but *696 the Court ruled that the employer or carrier could not be made to pay for the construction until petitioner had satisfied his burden of showing that it was reasonable and necessary to cure and relieve him.
Squeo further informs us that the standard of reasonableness and necessity to cure or relieve need not be limited to actual medical treatment. As the WCJ found, Giordano provided no hands-on medical care. In determining whether Giordano's services conform to Section 15 standards, the Division must address whether, among other things, the arranging and coordination of such care for a patient suffering from catastrophic injuries qualifies for Section 40 reimbursement.
The same showing that compels treatment under Section 15reasonableness and necessity to cure or relieveis required to warrant reimbursement for payment for such services. We conclude that the WCJ's findings did not address the standard required by the statute. The judge did not err in concluding that plaintiff benefitted from Giordano's services, but this finding is insufficient to warrant reimbursement.
By clarifying the standard that must be applied, we determine that a remand to the Division is appropriate to determine whether the proofs meet this standard. We do not suggest or infer that the result need be any different, but it well may be. That determination will, in the first instance, be addressed by the Division.
We comment on the concern expressed by plaintiff that to allow the assignment of rehabilitation nurses would be an invitation for "chicanery." First, we note that Giordano was not retained until plaintiff's attorney had agreed to her retention. Harleysville was not acting unilaterally. Securing plaintiff's concurrence in the retention provides an effective check on any suggestion of misdeed or inappropriate conduct by the insurer. Second, while plaintiff claims that cost-cuttingapparently an issue of concern to Giordanoonly served Harleysville, such is not the case. While cost reduction benefits the carrier, it benefits the employee as well. Since there is a reimbursement provision, any savings by the carrier inures to the employee's benefit, as it will reduce the employee's reimbursement obligation. Harleysville asserts that the rehabilitation nurse is only used in a limited number of cases involving catastrophic injury. Given plaintiff's prior approval, the reduction of cost to the employee and carrier and the limited use of such services, we find no basis for the suggestion of misuse of such services.
We add one additional comment. If, after consideration of all the relevant facts, the Division concludes that not all of Giordano's charges meet the standards that we have enumerated, the Division may apportion the charges accordingly. In Squeo, the Court remanded the matter to the Division "for a determination as to the portion of the cost of the construction of the apartment for which the employer will be liable." Squeo, supra, 99 N.J. at 607, 494 A.2d 313 (emphasis added). The Division may also apportion Giordano's expenses, if any, as it deems appropriate.
Plaintiff argues that Judge Gibson erred in dismissing the consumer fraud count of the complaint. We have considered the arguments and the record and find no merit in plaintiff's arguments. R. 2:11-3(e)(1)(E).
After the Division determined that the lien was properly reimbursable under Section 40, Judge Gibson did not review the merits of that decision but dismissed the remaining counts of the complaint. Since we remand the matter to the Division, counts IIIVI may, at some future time, still be viable. Ultimately, the determination as to the propriety of reinstating those counts pending the decision of the Division should be addressed by Judge Gibson, but we perceive no reason why any action should be taken regarding those counts until the underlying substantive issue is resolved. If the issue is resolved in favor of Harleysville, the issue is moot; if in favor of plaintiff, an appropriate application should be made to the Chancery Division for relief. There is no reason for us to otherwise intervene.
In A-3239-96T2, we affirm without prejudice. In A-3049-96T2, we reverse and remand to the Division in accordance with this opinion. We do not retain jurisdiction.
NOTES
[1] The actual amount paid for Giordano's services was $19,959.65; however, Harleysville sought reimbursement for two-thirds of the total. N.J.S.A. 34:15-40(b) and (e).