NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0338-18T4

SAMUEL MARTIN, III,

     Petitioner-Appellant,

v.

NEWARK PUBLIC SCHOOLS,

     Respondent-Respondent.

_____

APPROVED FOR PUBLICATION

December 13, 2019

APPELLATE DIVISION

Argued September 18, 2019 – Decided October 4, 2019

Before Judges Fuentes, Haas and Mayer.

On appeal from the New Jersey Department of Labor and Workforce Development, Division of Workers' Compensation, Claim Petition No. 2011-17344.

Joseph Michael Accardi argued the cause for appellant (Rothenberg, Rubenstein, Berliner & Shinrod, LLC, attorneys; Joseph Michael Accardi, of counsel and on the briefs).

Joseph Vincent Biancamano argued the cause for respondent (Biancamano & Di Stefano, PC, attorneys; Joseph Vincent Biancamano, of counsel and on the brief).

     The Opinion of the court was delivered by

MAYER, J.A.D.

Petitioner Samuel Martin, III appeals from an August 13, 2018 order of the Workers' Compensation Court denying his application for medical and temporary disability benefits. Petitioner requested reimbursement for continued prescription opioid medication to treat a lower back injury suffered during his employment with respondent Newark Public Schools. We affirm.

In May 2011, Martin injured his back in an employment-related car accident. In November 2014, Martin received a fifteen percent partial disability award for the orthopedic injury to his lower back as a result of the work-related accident and aggravation of a pre-existing lumbar disc herniation and bulge.

After receipt of the partial disability award, Martin filed a motion based on respondent's refusal to pay for Percocet prescriptions after September 2017. Martin claimed he required Percocet to relieve ongoing and recurrent pain subsequent to the car accident. Respondent opposed the motion, and the matter was scheduled before a judge of the Workers' Compensation Court.

The compensation judge conducted hearings to determine whether respondent should be compelled to pay for Martin's prescription opioid medication in accordance with the Workers' Compensation Act (Act), N.J.S.A. 34:15-1 to -142, specifically N.J.S.A. 34:15-15. The judge heard testimony

A-0338-18T4

from Martin; Martin's treating doctor, Patricio Grob, D.O.; and Martin's medical expert, Harris Bram, M.D.

Dr. Grob, an orthopedic surgeon, testified he began treating Martin in June 2011 and continued treating him through September 2017. In September 2017, Dr. Grob released petitioner, finding Martin reached maximum medical improvement. In discharging him, the doctor wrote a final prescription for Percocet as a courtesy to Martin.

From 2016 through 2017, the doctor wrote prescriptions for Martin to receive Percocet on a monthly basis. In a note from his June 2016 examination of petitioner, Dr. Grob advised that Percocet was poorly controlling Martin's pain and "prolonged narcotic use [would] not manage his radicular complaints . . . and [could] complicate his recovery . . . ." In 2015, Dr. Grob suggested surgery or epidural injections to address petitioner's pain complaints in lieu of opioid medication. Martin declined the suggested procedures due to an unrelated blood condition that increased his risk of surgical complications.

At Dr. Grob's suggestion, in the fall of 2017, Martin saw other doctors to reconsider surgery as a way to relieve his pain. Martin again declined surgery. Dr. Grob explained that not proceeding with surgery would be "quite limiting" for further treatment of Martin's lower back pain.

A-0338-18T4

Dr. Grob testified that Martin would never heal through continued use of pain medication. According to the doctor, after six years of treating petitioner, therapy or medication had not alleviated Martin's pain. It was Dr. Grob's medical opinion that the only form of treatment to cure or relieve the effects of Martin's work-related injury would be surgery.

In Dr. Grob's September 13, 2017 final medical note, the doctor wrote, "I would recommend to attempt to wean from [Percocet] and if we are unsuccessful, [Martin] would then need to consider having a discussion with [a] pain management specialist to see if there is any palliative standpoint that may be needed from a chronic management of [Martin's] discomfort." According to the doctor, ingesting prescription pain medication did not relieve Martin's condition, and the medication would never improve his condition. Dr. Grob told Martin, "[I]f you have difficulties you may have to pursue something from a palliative care point."

Martin saw Dr. Bram on January 8, 2018 for a one-time evaluation in support of the motion for medical and temporary disability benefits. Dr. Bram, who was qualified as an expert in the field of pain management, testified based on his examination of petitioner and review of Martin's May 7, 2016 MRI film. Dr. Bram found Martin had disc desiccation at L4-L5 and L5-S1, and a disc

herniation at L5-S1. He also reviewed Dr. Grob's medical records from petitioner's examinations in 2016 and 2017. According to Dr. Bram, Martin self-reported that Percocet abated his pain symptoms by approximately sixty percent, and he was more active on the medication. However, in taking petitioner's history, Dr. Bram noted Martin reported opioid medication provided only "small pain relief."

Dr. Bram testified there were a few positive physical findings based on his examination of petitioner. He testified Martin's lower extremities were neurologically intact and his gait was normal. Despite the limited positive physical findings upon examination, Dr. Bram concluded Martin had low back pain, lumbar radiculopathy, and sacroiliitis. Dr. Bram therefore opined, "it was reasonable that [Martin] be on opioid medication on a long term basis for his pain. I thought that was reasonable for him."

In an August 8, 2018 written decision, the judge denied Martin's motion seeking reimbursement for prescription Percocet. He held petitioner failed to prove continued treatment with opioid medication would reduce Martin's pain or permit him to function better. The judge found Dr. Grob's testimony, having treated Martin for six years, to be more credible than the testimony of the one-time evaluating physician, Dr. Bram. The judge wrote that nothing precluded

his according "greater weight to a treating physician's opinion when the issue before the court is the need for medical treatment."

The judge concluded Dr. Bram "did not provide any medical evidence that such treatment will permit the petitioner to function better."  Nor did petitioner's expert expressly find continued opioid medication would relieve Martin's pain. Dr. Bram simply opined long-term opioid medication was "reasonable" without explaining why.

On appeal, Martin argues the judge improperly accorded greater weight to the medical testimony of the treating doctor.  In addition, he contends the judge wrongly compelled his counsel to discuss the testimony of the treating doctor in the presence of counsel for respondent.  Further, Martin claims the judge misapplied the standard governing an application for palliative care.

In reviewing decisions of judges in the Workers' Compensation Court, "[t]he factual findings of the compensation court are entitled to substantial deference." Ramos v. M & F Fashions, Inc., 154 N.J. 583, 594 (1998).  We limit our inquiry "to whether the findings made by the Judge of Worker's Compensation could reasonably have been reached on sufficient credible evidence present in the record, considering the proofs as a whole, with due regard to the opportunity of one who heard the witnesses to judge of their

6

credibility . . . ." Ibid. (quoting Bradley v. Henry Townsend Moving & Storage Co., 78 N.J. 532, 534 (1979)).

We start with petitioner's claim that the compensation judge erred in according greater weight to the testimony of Dr. Grob than the testimony of Dr. Bram. Compensation judges have "expertise with respect to weighing the testimony of competing medical experts." Id. at 598. This court "may not 'engage in an independent assessment of the evidence as if it were the court of first instance.'" Sager v. O.A. Peterson Constr. Co., 182 N.J. 156, 164 (2004) (quoting State v. Locurto, 157 N.J. 463, 471 (1999)). Compensation judges who see and hear the testimony of experts are in the best position to assess the demeanor and credibility of the expert witnesses. Ramos, 154 N.J. at 598. A "judge of compensation 'is not bound by the conclusional opinions of any one or more, or all of the medical experts.'" Kaneh v. Sunshine Biscuits, 321 N.J. Super. 507, 511 (App. Div. 1999) (quoting Perez v. Capitol Ornamental, Concrete Specialties, Inc., 288 N.J. Super. 359, 367 (App. Div. 1996)). "That [the judge] gave more weight to the opinion of one physician as opposed to the other provides no reason to reverse th[e] judgment." Bellino v. Verizon Wireless, 435 N.J. Super. 85, 95 (App. Div. 2014) (alterations in original)

(quoting Smith v. John L. Montgomery Nursing Home, 327 N.J. Super. 575, 579 (App. Div. 2000)).

Here, the compensation judge articulated his reasons for crediting Dr. Grob's testimony, including the doctor's treatment of petitioner over the course of six years. Courts have stressed "the greater opportunity of a treating physician, as compared with a doctor who conducts a single examination in order to become an expert medical witness, to know, understand and decide upon the producing cause of the patient's condition." Mernick v. Div. of Motor Vehicles, 328 N.J. Super. 512, 522 (App. Div. 2000) (quoting Bober v. Indep. Plating Corp., 28 N.J. 160, 167 (1958)). We defer to the compensation judge's factual findings under the circumstances.

We next consider petitioner's argument that the judge misapplied the law concerning the application for continued palliative care treatment. The Act requires employers to provide treatment to injured employees when the treatment is "necessary to cure and relieve the worker of the effects of the injury and to restore the functions of the injured member or organ where such restoration is possible . . . ." N.J.S.A. 34:15-15.

Whether the treatment is characterized as curative or palliative, the treatment is compensable if competent medical testimony shows that it is

"reasonably necessary to cure or relieve the effects of the injury." Hanrahan v. Twp. of Sparta, 284 N.J. Super. 327, 336 (App. Div. 1995). A claimant must show the treatment would "probably relieve petitioner's symptoms and thereby improve his ability to function." Ibid. "[I]n determining what is reasonable and necessary, the touchstone is not the injured worker's desires or what he thinks to be most beneficial. Rather, it is what is shown by sufficient competent evidence to be reasonable and necessary to cure and relieve him." Squeo v. Comfort Control Corp., 99 N.J. 588, 606 (1985). "A mere showing that the injured worker would benefit from the added treatment is not enough." Raso v. Ross Steel Erectors, Inc., 319 N.J. Super. 373, 383 (App. Div. 1999). There may be a point at which "the pain or disability experienced by the worker is insufficient to warrant the expense of active treatment." Hanrahan, 284 N.J. Super. at 336 (citing Squeo, 99 N.J. at 606).

Here, the judge found credible the testimony of Dr. Grob that continued prescribing of pain medication did not, and would never, heal petitioner or relieve his condition. During the six years he treated petitioner, Dr. Grob concluded Martin's pain had not been alleviated with therapy or medication. The treating doctor opined that the only form of treatment to cure or relieve the effects of Martin's work-related injury would be surgery.

Contrary to petitioner's contention, Dr. Grob did not refer him to a pain management specialist. It was Dr. Grob's medical opinion that if petitioner was unsuccessful in weaning himself from prescription opioid medication, Martin "would then [need to] consider having a discussion with [a] pain management specialist . . . ."

Dr. Bram, Martin's one-time evaluating medical expert, did not offer any medical evidence that petitioner's continued treatment with Percocet would relieve his symptoms. Dr. Bram found few positive objective physical findings during his examination of petitioner that would support the conclusion Martin needed long-term prescription opioid medication to function better. Dr. Bram simply opined that continuing treatment with Percocet was "reasonable." He offered no evidence or testimony that the continued treatment with prescription opioid medication would reduce Martin's pain symptoms and return him to better function.

We are satisfied there was sufficient, credible evidence in the record to support the compensation judge's determination that further treatment with opioid medication would not cure or relieve Martin's injury. The judge reviewed the medical records introduced as evidence and considered the experts'

testimony after having the opportunity to assess the experts' credibility in weighing their opinions.

We next review Martin's argument that the compensation judge improperly allowed respondent's counsel to be present when petitioner's counsel interviewed Dr. Grob. Petitioner's reliance on Stempler v. Speidell, 100 N.J. 368 (1985) in support of his argument that the physician-patient privilege afforded him the right to interview Dr. Grob ex parte is misplaced.

As Dr. Grob's patient, Martin and his attorney had the right to meet with Dr. Grob to discuss the doctor's testimony. As of February 21, 2018, petitioner's counsel knew respondent's counsel intended to call Dr. Grob as respondent's witness. If Dr. Grob was not returning telephone calls to schedule a meeting to discuss the doctor's testimony, Martin had ample opportunity to seek judicial intervention. On April 4, 2018, immediately prior to Dr. Grob's scheduled testimony, Martin's counsel requested permission to speak ex parte with Dr. Grob. In the interests of fairness to all parties, the judge permitted petitioner's counsel to interview Dr. Grob, but allowed respondent's counsel to be present during the interview.

We are satisfied that the judge properly exercised his discretion as a result of the late request by petitioner's counsel to interview Dr. Grob. Judges are

11

accorded "wide discretion in exercising control over their courtrooms" and trial proceedings.  See State v. Stewart, 453 N.J. Super. 55, 67 (App. Div. 2018) (citing D.A. v. R.C., 438 N.J. Super. 431, 461 (App. Div. 2014)).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-0338-18T4