**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2729-24

ROGER KNEEZEL,[1]

    Petitioner-Respondent,

v.

LAMBERTVILLE[2] HOUSE,

    Respondent-Appellant.

_____

        Submitted April 28, 2026 – Decided June 1, 2026

        Before Judges Gooden Brown and Rosero.

        On appeal from the Division of Workers' Compensation, Department of Labor and Workforce Development, Claim Petition No. 2021-23234.

        Patricia R. Carley, LLC, attorney for appellant (Patricia R. Carley, on the briefs).

        Kotlar Cohen, attorneys for respondent (Wendi M. Spector, on the brief).

---

[1] Elsewhere in the record, the first name is spelled, "Rodger."

[2] Lambertville is misspelled as Lamberville.

PER CURIAM

In this workers' compensation case, Lambertville House (Lambertville) appeals from a March 20, 2025 order granting petitioner Roger Kneezel's motion to strike Lambertville's defenses and directing Lambertville to authorize Kneezel's knee replacement surgery necessitated by injuries sustained in a work-related accident.  We affirm.

I.

By way of background, Kneezel was employed as Lambertville's property manager for eighteen years.  On December 22, 2019, Kneezel injured his back and knee when he "slipped on wet tile" while "carrying two four-gallon buckets of water."  Kneezel immediately reported the accident to Lambertville's general manager and a claim petition seeking workers' compensation benefits was filed.  The parties stipulated that Kneezel was in the course and scope of his employment on December 22, 2019, when he suffered a compensable accident.  See N.J.S.A. 34:15-1 (providing compensation to an employee for personal injury "caused . . . by accident arising out of and in the course of his [or her] employment").

Two months after the accident, Kneezel began to have "radiating pain to the left leg" and "some back discomfort."  He was treated at an urgent care center

2

A-2729-24

on February 25, 2020, advised to follow up with an orthopedist, and later diagnosed with "neck strain, thoracic compression fracture, lumbar spondylosis and internal derangement of the left knee." Thereafter, Kneezel was treated at the Rothman Institute (Institute), where he was "given a [back] brace and sent for . . . [magnetic resonance imaging (MRI)]." Kneezel also began treatment with Dr. Philip Sasso, a pain specialist who gave Kneezel four epidural steroid injections in his lower back and referred Kneezel to Dr. Guy Lee, an orthopedic surgeon at the Institute.

After evaluating Kneezel's worsening back pain, Lee recommended a "[l]umbar [d]ecompression surgery at L1-L2-L3," which was scheduled sometime in September 2021. However, the day before the scheduled surgery, the carrier cancelled the surgery and directed Kneezel to seek a second opinion from Dr. Lawrence Barr. Kneezel's counsel sought approval for the surgery and, on October 5, 2021, filed a motion for medical treatment and temporary disability benefits (MMT) in the Division of Workers' Compensation (DWC).

In a supporting certification, Kneezel attested:

> [M]y symptoms are getting progressively worse. . . . I wish to move forward with Dr. Lee's recommendations . . . . At this time, I am respectfully requesting the court enter an [o]rder requiring [Lambertville] to authorize the surgery that has been recommended by Dr. Lee, as well as any additional recommended treatment. . . . I

3

also respectfully request that the [c]ourt enter an [o]rder requiring [Lambertville] to pay temporary benefits if warranted.

On November 22, 2021, a judge of workers' compensation (JWC) entered an order granting Kneezel's motion. In the order, the JWC stated:

> [Lambertville] will authorize the surgery recommended by Dr. Lee and scheduled to take place on December 14, 2021. [Lambertville] shall continue to authorize all treatment as recommended by the authorized physicians. [Lambertville] shall pay disability benefits to commence effective December 1, 2021 (or any date as determined by the authorized treating doctor if different than [December 1, 2021,]) and continuing, per statute. Attorney fees to abide.

As a result, Kneezel continued to receive authorized treatment for his back.

In early 2022, Lee referred Kneezel to Dr. Sean Bryan to address pain in Kneezel's left knee. Kneezel underwent an "MRI of the left knee and injections," all of which were authorized and paid for by Lambertville. Bryan also recommended a knee replacement, but Kneezel declined the procedure at the time because his pain was being managed by the injections.

Approximately two years later, in 2024, Kneezel requested additional treatment for his left knee, which Lambertville denied. At the request of Kneezel's counsel, Dr. Dhimant Balar examined Kneezel on June 17, 2024. During the examination, Kneezel stated his symptoms "began after a [December

4

22, 2019] work injury." Kneezel told Balar his injury "occurred due to . . . [him] walking the corner and slip[ping] on water that was on the floor." Kneezel explained he "fell onto his left knee," which "buckled under him." Kneezel also told Balar he "ha[d] not returned to work since the injury" and was "on disability."

In his report, Balar stated Kneezel's "left knee demonstrate[d] no effusion, global tenderness more along the medial and lateral joint line with moderate varus deformity of the left knee and leg." Balar did not find any signs of "acute ligamentous instability" on examination. However, he noted "[h]ip range of motion [wa]s full and with pain [i]n the left [knee], likely compensatory from his gait as related to the left knee." Balar recommended "a brief course of physical therapy with transition to home exercises." Balar added if physical therapy and exercise did not work, a "total knee replacement" was necessary to provide Kneezel with "long-term relief and quality of life." In his report, Balar acknowledged: "[I]t is within a degree of medical probability that [Kneezel's] current symptoms in the left knee are directly related to the injury and mechanism of injury he describes" arising from the December 22, 2019 accident.

In August 2024, Kneezel filed a second MMT to compel treatment for his left knee. Kneezel sought an order requiring Lambertville to "authorize the

medical treatment recommended by Dr. Balar . . . as well as any additional[] and temporary benefits."  In support, Kneezel submitted Balar's report.  In response, Lambertville denied treatment and submitted with its answering pleading reports prepared by investigators who surveilled Kneezel in March and June of 2024 but reportedly "did not observe him having any difficulty walking."  Lambertville also submitted medical reports, including an August 1, 2024 report prepared by Dr. Erik Zachwieja, who opined that Kneezel's "need for left knee treatment was due to his pre-existing condition of osteoarthritis."

Specifically, after reviewing Kneezel's MRI and other medical records, Zachwieja believed Kneezel "clearly had advanced degenerative changes of the left knee joint that predated the work injury in question."  Zachwieja found "no evidence of an acute trauma[,] such as bony contusions[,] that may have aggravated his pre-existing condition."  Based on the lack of evidence, Zachwieja concluded Kneezel's "osteoarthritis . . . predate[d] the work injury," "was not caused by or objectively worsened by the work injury," and therefore fell "outside the auspices of his [w]orkers' [c]ompensation claim."

A-2729-24

On November 18, 2024, a hearing commenced on the MMT with Kneezel testifying before the judge[3] that "he requested additional treatment in 2024 because the pain in his knee never went away and he was having 'a lot of trouble walking, . . . sitting, . . . and lying down[, b]ut mainly walking.'" Kneezel explained "he could [not] walk for [more than] five to ten minutes before . . . stop[ping]." Kneezel also stated he had "prior arthroscopic surgery to his left knee" and "had surgery on both knees in his twenties."

The investigators who performed surveillance on Kneezel were scheduled to testify the week of January 13, 2025, and Balar's testimony would be scheduled thereafter. Following a January 27, 2025 conference, the investigators were rescheduled to testify on February 10, 2025, and Balar on February 13, 2025. Upon being advised that one of the investigators was not available on February 10, 2025, the judge rescheduled that investigator's testimony to precede Balar's on February 13, 2025. During a February 7, 2025 conference, upon learning Lambertville had not provided outstanding discovery to Kneezel before the scheduled testimony, the February 10 and 13, 2025 dates were cancelled. At that time, Lambertville had not provided "the names or CVs"

---

[3] The transcript was not provided in the record but the judge recounted Kneezel's testimony in her subsequent written opinion denying reconsideration.

of the testifying investigators or "the raw feed" encompassing several days of footage.

On February 21, 2025, Kneezel moved to strike Lambertville's defenses and sought an order directing Lambertville to authorize Kneezel's left knee surgery as requested in Kneezel's MMT. In a supporting certification, Kneezel's counsel cited Lambertville's "unreasonable delay" in providing the necessary information, "resulting in further deterioration of the condition of [Kneezel's] left knee." Lambertville filed no opposition to Kneezel's motion to strike.

On March 3, 2025, the judge held another conference and confirmed by way of a March 5, 2025 email that the investigators would testify on March 19, 2025, and Balar on March 27, 2025. Lambertville's counsel indicated "she would be out of state the week of March 17[, 2025,] but could make herself available for the testimony on March 19[, 2025]." Upon learning that one of the investigators was not available on March 19, 2025, the testimony was rescheduled to March 24, 2025, with Balar still scheduled to testify on March 27, 2025.

On March 14, 2025, Kneezel's counsel notified the judge "she was still waiting on" discovery, including some "videos because certain links had expired and could not be viewed," information on the investigators who had conducted

A-2729-24

surveillance on Kneezel, and surveillance reports. Lambertville provided a report that referenced one day of surveillance, despite there being "eleven other days of video clips." As a result, the judge emailed Lambertville's counsel on March 14, 2025, directing her "to provide the remaining information by the afternoon of March 17[, 2025]."

Lambertville provided video clips revealing surveillance conducted after Kneezel testified, thereby demonstrating there were new surveillance dates without reports. As a result, on March 19, 2025, the judge emailed the parties advising that "if everything was not provided to [Kneezel's counsel] by the end of the day[, the court would be] inclined to sign the order sought in [Kneezel's] February 21, 2025 motion." That same day, Lambertville's counsel sent an email with a hyperlink and stated: "All videos can be viewed and downloaded via the link below (it will expire in seven days)." Also on that day, Kneezel's counsel confirmed that discovery deficiencies still existed.

The following day, March 20, 2025, the judge entered an order striking Lambertville's defenses and ordering treatment for Kneezel's left knee as recommended by Bryan and Balar. Lambertville subsequently moved for reconsideration or a stay of the March 20, 2025 order pending appeal. Following oral argument, the judge denied Lambertville's motion on May 19, 2025. In a

9

written decision, the judge stated under N.J.A.C. 12:235-3.11(a)(4)(i), if Lambertville intended to use surveillance at trial, it was required to "provide the surveillance information to the other side" after Kneezel testified.[4] The judge explained Kneezel testified on November 18, 2024, yet, to date, Lambertville failed to provide the required discovery.

In rejecting Lambertville's argument that the March 20, 2025 order was entered for unknown reasons, the judge elaborated:

> [Lambertville] was aware of the issues in this matter before [its attorney] was out of the office the week of March 17th. Testimony was rescheduled for [Lambertville] to provide additional information several times. [Lambertville] was afforded ample time to provide the information before testimony and did not do so. Motions for medical and temporary disability

---

[4] N.J.A.C. 12:235-3.11(a) provides in relevant part:

> In any formal proceeding, the Division shall schedule a pre-trial conference where the following shall be accomplished . . . [a] pre-trial memorandum on a form prescribed by the Division shall be executed . . . Any party that intends to utilize videos or other electronic media, including surveillance tapes, must indicate that such media will be utilized at trial and identify the witness who will authenticate and testify concerning the materials to be presented in the "Other Witness" section of the pre-trial memorandum or as an addendum to the pre-trial memorandum. A party is not required to provide or exhibit electronic information, including surveillance tapes, to another party prior to the other party's testimony under oath.

benefits need to be moved expeditiously. [Lambertville] was advised by the court via email that failure to provide this information would result in the entry of the within [o]rder. [Lambertville] was notified and chose not to respond to their detriment.

Pursuant to N.J.A.C. 12:235-3.5(b)[,] a "notice of motion shall be considered uncontested unless responsive papers are filed and served within [fourteen] days of the service of the motion." [Lambertville] did not file a response to [Kneezel's] February 21, 2025 [m]otion to strike. [Lambertville] argues that the ongoing discussions regarding the testimony was de facto opposition to the February 21, 2025 [m]otion. This court disagrees and notes in addition to no formal opposition being filed[,] the court was clear in its directives and [Lambertville] chose to ignore same.

Additionally, the judge reiterated that Kneezel's MMT was meritorious. The judge recounted Kneezel's November 18, 2024 testimony, finding it "credible based upon [his] lack of contradictions or changes in his testimony, [and] the way he presented himself and generally answered questions in a reasonable and logical fashion." The judge also observed that "[d]uring [Kneezel's] testimony[,] he was visibly uncomfortable and had to stand up and move."

The judge further noted although DWC rules "do not specifically allow for a [m]otion for [r]econsideration," or "a [m]otion to [s]tay an order," Lambertville "failed to meet the standard for relief" under Rule 4:49-2 for

11

reconsideration[5] or <u>Crowe v. De Gioia</u>, 90 N.J. 126 (1982) for injunctive relief.[6] As to the latter, according to the judge, "[Lambertville] made no showing that irreparable harm will occur to [it] and no showing of [its] likelihood of success." On the contrary, "greater harm will occur to [Kneezel] if he is not provided with the recommended medical treatment."[7] This appeal followed.[8]

On appeal, Lambertville raises the following points for our consideration:

> I. THE ORDER OF MARCH 20, 2025 VIOLATED THE APPELLANT'S DUE PROCESS RIGHTS

---

[5] Reconsideration is reserved for those cases "in which either 1) the [c]ourt has expressed its decision based upon a palpably incorrect or irrational basis, or 2) it is obvious that the [c]ourt either did not consider, or failed to appreciate the significance of probative, competent evidence." <u>Cummings v. Bahr</u>, 295 N.J. Super. 374, 384 (App. Div. 1996) (quoting <u>D'Atria v. D'Atria</u>, 242 N.J. Super. 392, 401 (Ch. Div. 1990)).

[6] Under <u>Crowe</u>, a party seeking a stay must demonstrate: (1) relief is needed "to prevent irreparable harm"; (2) the applicant's claim rests on settled law and has "a reasonable probability of ultimate success on the merits"; and (3) balancing "the relative hardship to the parties" reveals that greater harm would occur if a stay is not granted than if it were. <u>Id.</u> at 132-34.

[7] Although "New Jersey court rules do not directly control the actions of a compensation judge, . . . [']it has been recognized that court-fashioned doctrines for the handling of litigation do in fact have some genuine utility and relevance in administrative proceedings.'" <u>Waters v. Island Transp. Corp.</u>, 229 N.J. Super. 541, 550 (App. Div. 1989) (quoting <u>City of Hackensack v. Winner</u>, 82 N.J. 1, 29 (1980)).

[8] On July 25, 2025, this court also denied Lambertville's motion for a stay pending appeal.

A-2729-24

BECAUSE THERE WAS NO OPPORTUNITY TO BE HEARD.

II.   THE ORDER TO SUPPRESS APPELLANT'S DEFENSES AND GRANT APPELLEE'S [MMT] WAS PROCEDURALLY AND FACTUALLY DEFECTIVE.

A.  Because The Relevant Discovery Was Supplied Before The Entry Of An Order, Appellant[']s Defenses Should Not Have Been Suppressed.

B.   The Ongoing Discussions, The Continued Disclosures And The Date Set For The Testimony Of Witnesses Constituted De Facto Opposition To The Motion For Discovery By Both Word And Deed Within The Custom And Usage Of The DWC.

C.   Even If The Court Believed That Appellee Was Entitled To Additional Material Beyond What Was Disclosed, The Proper Remedy Was To Compel The Production Or Exclude The Disputed Evidence But Not To Impose The Ultimate Sanction.

II.

Appellate review of a decision rendered by a JWC is limited to determining "whether the findings . . . could reasonably have been reached on sufficient credible evidence present in the whole record, after giving due weight to [the judge's] expertise in the field and his [or her] opportunity of hearing and

13

seeing the witnesses."  De Angelo v. Alsan Masons, Inc., 122 N.J. Super. 88, 89-90 (App. Div.), aff'd, 62 N.J. 581 (1973).  We therefore do "not substitute [our] own judgment for the agency's even though [we] might have reached a different result."  Raso v. Ross Steel Erectors, Inc., 319 N.J. Super. 373, 380 (App. Div. 1999) (citing Clowes v. Terminix Int'l Inc., 109 N.J. 575, 588 (1988)); see also Sager v. O.A. Peterson Constr., Co., 182 N.J. 156, 164 (2004) (same).

Thus, a JWC's findings "should not be reversed unless they are 'manifestly unsupported by or inconsistent with competent relevant and reasonably credible evidence as to offend the interests of justice.'"  McGory v. SLS Landscaping, 463 N.J. Super. 437, 452-53 (App. Div. 2020) (quoting Lindquist v. Jersey City Fire Dep't, 175 N.J. 244, 262 (2003)).  The JWC's interpretation of the law, on the other hand, is not entitled to special deference.  Sexton v. Cnty. of Cumberland/Cumberland Manor, 404 N.J. Super. 542, 548 (App. Div. 2009) (citing Manalapan Realty, L.P. v. Twp. Comm. of Manalapan, 140 N.J. 366, 378 (1995)).  Thus, "if there has been a mistaken application of the law to the facts, we must grant appropriate relief."  Verge v. Cnty. of Morris, 272 N.J. Super. 118, 123 (App. Div. 1994).  Still, the burden is on the appellant to demonstrate "that the agency's action was arbitrary, unreasonable or capricious."  Raso, 319

14

N.J. Super. at 380-81 (citing Barone v. Dep't of Human Servs., 210 N.J. Super. 276, 285 (App. Div. 1986), aff'd, 107 N.J. 355 (1987)).

Under the Workers' Compensation Act (the Act), N.J.S.A. 34:15-1 to -147, an employer must furnish an injured worker with medical treatment and services necessary "to cure and relieve the worker of the effects of the injury and to restore the functions of the injured member or organ" if possible.  N.J.S.A. 34:15-15.  The Act is to be "liberally construed so that its beneficent purposes may be accomplished."  Squeo v. Comfort Control Corp., 99 N.J. 588, 596 (1985).  Indeed, it is intended "to provide a quick, efficient remedy for wage loss and the permanent impairment of physical capacity suffered by a workman because of a work-connected injury."  Elec. Assocs., Inc. v. Heisinger, 111 N.J. Super. 15, 19-20 (App. Div. 1970).

A MMT "shall evidence that petitioner is currently temporarily totally disabled and/or in need of current medical treatment."  N.J.A.C. 12:235-3.2(a).[9]

_____

[9] Because "liability for medical treatment and temporary disability benefits was enforceable prior to any eventual adjudication regarding permanent disability," we have treated an order imposing liability as final for purposes of appeal. Hodgdon v. Project Packaging, 214 N.J. Super. 352, 360 (App. Div. 1986); see also Della Rosa v. Van-Rad Contracting Co., Inc., 267 N.J. Super. 290, 294 (App. Div. 1993) ("An award for temporary medical and disability benefits shares many of the characteristics of a final judgment . . . and a respondent should be entitled to pursue an appeal therefrom as a matter of right.").

The motion must contain "[a]ffidavits or certifications made in personal knowledge by the petitioner or the petitioner's attorney, as well as the report(s) of a physician(s) stating the medical diagnosis and the . . . treatment being sought." N.J.A.C. 12:235-3.2(b)(2). Respondent shall file an answer within certain time frames, N.J.A.C. 12:235-3.2(d), and the DWC "shall list the motion for a hearing before a Judge of Compensation peremptorily within [thirty] days of the filing of the motion," N.J.A.C. 12:235-3.2(e).

Under the regulations,

> [a]ffidavits, certifications and medical reports submitted . . . in support of the motion may constitute a prima facie case and may be sufficient basis for the issuance of an order compelling the respondent to provide the relief sought unless respondent files supporting affidavits or certifications to oppose said motion on a legal or factual basis, or files medical reports if there is a medical basis to oppose said motion.
>
> [N.J.A.C. 12:235-3.2(f).]

"A petitioner may prevail on a [MMT] based on the supporting documentation and without a plenary hearing 'only if opposing documents are facially insufficient to fairly meet, contradict[,] or oppose the material allegations of the documents [supporting] the motion.'" McGory v. SLS Landscaping, 463 N.J. Super. 437, 455 n.8 (App. Div. 2020) (third alteration in original) (quoting Hogan v. Garden State Sausage Co., 223 N.J. Super. 364, 367

16                                                                    A-2729-24

(App. Div. 1988)). Still, "even in an uncontested motion, the judge must consider whether undisputed facts are sufficient to entitle a party to relief." Allstate Ins. Co. v. Fisher, 408 N.J. Super. 289, 302 (App. Div. 2009). "It is not enough to suggest that there is no opposition, especially if the facts do not warrant the granting of relief in the first instance." Ibid.

Here, in his MMT, Kneezel filed the requisite submissions to establish a prima facie case for treatment and benefits. The judge found Kneezel credible and his claim meritorious. Once Lambertville's defenses were stricken, the judge considered whether the undisputed facts warranted the granting of relief and properly granted the motion as uncontested.

Lambertville argues the March 20, 2025 order violated its procedural due process rights because it was not afforded a "meaningful opportunity to be heard." We disagree.

> A [JWC] "is not strictly bound by rules of evidence and procedure but must respect and [e]nsure due process and fundamental rights of litigants." Waters v. Island Transp. Corp., 229 N.J. Super. 541, 547 (App. Div. 1989) (citing Jasaitis v. City of Paterson, 48 N.J. Super. 103, 109 (App. Div. 1957)). Our Supreme Court has observed, "[d]ue process is not a fixed concept . . . but a flexible one that depends on the particular circumstances," but "[f]undamentally, due process requires an opportunity to be heard at a meaningful time and in a meaningful manner." Doe v. Poritz, 142 N.J. 1, 106 (1995). We have held that, in

accordance with due process principles, the opportunity to be heard "includes not only the right to cross-examine the adversary's witnesses but also the right to present witnesses to refute the adversary's evidence." Paco v. Am. Leather Mfg. Co., 213 N.J. Super. 90, 97 (App. Div. 1986).

[McGory, 463 N.J. Super. at 453 (third and fourth alterations in original).]

Here, Lambertville was provided with notice and multiple opportunities to be heard. The judge conducted numerous conferences and exchanged communications with the parties necessitated by the unavailability of Lambertville's investigators when they were scheduled to testify and Lambertville's failure to turn over outstanding discovery. Lambertville's repeated failure to comply with the judge's simple requests rather than any denial of due process ultimately led to the entry of the March 20, 2025 order.

We reject Lambertville's contention that the judge violated the regulations in granting Kneezel's uncontested motion to strike Lambertville's defenses. To support its argument, Lambertville relies on N.J.A.C. 12:235-3.5(c), providing that "motions to suppress defenses" in workers' compensation matters "shall be listed for a hearing." However, as the judge aptly pointed out, N.J.A.C. 12:235-3.5(b) provides in part: "The notice of motion shall be considered uncontested unless responsive papers are filed and served within [fourteen] days of the

service of the notice of motion."  Here, Kneezel moved to strike Lambertville's defenses and Lambertville failed to file any response or opposition to the motion.  As such, the judge was not required to conduct a hearing on an uncontested motion.

Equally unavailing is Lambertville's reliance on N.J.A.C. 12:235-3.12(e)(1), governing the conduct of formal hearings in the DWC.  Specifically, N.J.A.C. 12:235-3.12(e)(1) (emphasis added) provides:  "<u>Except in situations where there is no material dispute of fact</u>, issues shall not be decided until all sides have had the opportunity to provide full proofs based upon, but not limited to, oral testimony, affidavits and other proofs as stipulated by the parties or required by the judge."  Here, because the motion was uncontested, there was no material dispute of fact.  Thus, we are satisfied there was no due process violation.

Lambertville also argues it "did more than [what] was required" under the regulations and the motion suppressing its defenses was granted "without a basis for doing so."  It asserts the doctrine of substantial performance, which "prevents . . . defeating legitimate claims on technicalities alone," applies.  It contends the judge erred in not compelling it to produce the discovery or exclude the evidence instead of "impos[ing] the ultimate sanction."

N.J.A.C. 12:235-3.11(a)(4)(i) is clear that once the opposing party has testified, the party seeking to utilize surveillance evidence must disclose the evidence to the testifying party. Lambertville had over four months to provide the surveillance information to Kneezel after he testified but failed to do so despite the judge's warning that failure to provide the information would result in the entry of the order. Contrary to Lambertville's argument that it was in full compliance with its discovery obligations, the email communications between the attorneys and the judge show there was outstanding discovery about which Lambertville had been duly notified months before the order was entered. Lambertville's dilatory conduct was further evidenced by its failure to submit responsive pleadings to Kneezel's motion to strike its defenses. Lambertville has simply not met its burden of showing that the judge's ultimate conclusion was arbitrary, unreasonable or capricious. Raso, 319 N.J. Super. at 380.

We reject Lambertville's argument that the "ongoing discussions" and "continued disclosures" constituted "de facto opposition" to invoke "[t]he doctrine of substantial compliance." "Courts invoke the doctrine of substantial compliance to 'avoid technical defeats of valid claims.'" Alan J. Cornblatt, P.A. v. Barow, 153 N.J. 218, 239 (1998) (quoting Zamel v. Port of N.Y. Auth., 56 N.J. 1, 6 (1970)).

20

The doctrine of substantial compliance requires that defaulting party show the following:

> (1) the lack of prejudice to the defending party; (2) a series of steps taken to comply with the statute involved; (3) a general compliance with the purpose of the statute; (4) a reasonable notice of petitioner's claim, and (5) a reasonable explanation why there was not a strict compliance with the statute.
>
> [Ibid. (quoting Bernstein v. Bd. of Trs. of Tchrs.' Pension & Annuity Fund, 151 N.J. Super. 71, 76-77 (App. Div. 1977)).]

We acknowledge we have previously applied the doctrine to regulatory provisions. See Maguire v. Mohrmann, 397 N.J. Super. 103, 110 (App. Div. 2007) ("Although no specific case was found applying the doctrine to regulatory provisions, we conclude that, in the absence of language foreclosing that possibility, no impediment to application is presented.").

Here, over the course of several months, Lambertville failed to comply with the regulation's clear requirements and failed to provide a reasonable explanation for its noncompliance, resulting in Kneezel's treatment and benefits being delayed. We conclude Lambertville's invocation of the doctrine in these circumstances is disingenuous. "[O]ur courts have not hesitated in the past to construe the . . . [A]ct so as to comport with its presumptive beneficent and

21

remedial objectives favorable to injured workmen rather than to be bound by its coldly literal import." Squeo, 99 N.J. at 597 (first alteration in original) (quoting Paul v. Balt. Upholstering Co., 66 N.J. 111, 136 (1974)).

We also reject Lambertville's assertion that the judge should have compelled production of the outstanding discovery or excluded the disputed evidence rather than imposing such a drastic remedy. Ordinarily, we apply "an abuse of discretion standard to decisions . . . relating to matters of discovery." C.A. ex rel. Applegrad v. Bentolila, 219 N.J. 449, 459 (2014) (quoting Pomerantz Paper Corp. v. New Cmty. Corp., 207 N.J. 344, 371 (2011)). As a result, "[w]e generally defer to a trial court's disposition of discovery matters unless the court has abused its discretion or its determination is based on a mistaken understanding of the applicable law." Rivers v. LSC P'ship, 378 N.J. Super. 68, 80 (App. Div. 2005). An abuse of discretion "arises when a decision is 'made without a rational explanation, inexplicably departed from established policies, or rested on an impermissible basis.'" Flagg v. Essex Cnty. Prosecutor, 171 N.J. 561, 571 (2002) (quoting Achacoso-Sanchez v. Immigr. and Naturalization Serv., 779 F.2d 1260, 1265 (7th Cir. 1985)). Stated differently, the standard examines "whether there are good reasons for an appellate court to defer to the particular decision at issue." Ibid.

22

Here, we discern no abuse of discretion and ample justification to defer to the judge's decision. In sum, we are satisfied the judge's rulings are amply supported by sufficient credible evidence in the record and we discern no procedural or substantive error to justify our intervention.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

*M.C. Harley*

Clerk of the Appellate Division

A-2729-24