229 N.J. Super. 541 (1989)
552 A.2d 205
CHERYL WATERS, PETITIONER-APPELLANT,
v.
ISLAND TRANSPORTATION CORP., RESPONDENT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued October 3, 1988.
Decided January 12, 1989.
*543 Before Judges GRUCCIO and LANDAU.
Alan Roth argued the cause for appellant (Bendit, Weinstock & Sharburgh, attorneys).
George J. Kenny argued the cause for respondent (Connell, Foley & Geiser, attorneys, George J. Kenny, of counsel, Marie T. Quinn, on the brief).
The opinion of the court was delivered by GRUCCIO, J.A.D.
Petitioner Cheryl Waters appeals from the determination of the judge of compensation dismissing her dependency claim petition for failure to sustain the burden of proof. We find petitioner's procedural due process rights violated and reverse.
Waters' dependency claim petition was filed October 27, 1983, alleging that Waters' decedent Paul T. Waters suffered a heart attack related to his employment with respondent Island Transportation Company and subsequently died. Waters claimed her dependency and that of her four children, all under the age of *544 eighteen. Island filed an answer denying compensability. Following the exchange of answered interrogatories on the issue of causal relationship and dependency, the matter was pretried on June 24, 1985. The pretrial order listed Waters' medical expert as Herbert B. Silberner. Island apparently did not have a medical expert and the pretrial memorandum simply indicates, "To be supplied."
Testimony commenced before the judge of compensation on December 9, 1985, and was thereafter continued to February 3, 1986. At the conclusion of testimony on the latter date, the judge opined, "one admonition, next time I want all the lay testimony in. I don't want this to drag out with a witness a month program. Let's finish it up."
The procedural history then indicates that following the February 3, 1986 hearing, the attorney for Island requested several adjournments because Island and its representatives failed to cooperate and appear for scheduled hearings. Counsel for Waters appeared on each occasion. Island's insurance carrier then went into bankruptcy and further prosecution of the case was delayed. After several months, on August 8, 1986, Waters' counsel wrote to the Director of the Division of Compensation seeking a status report. Chief Judge Napier responded and forwarded a letter inquiry to New Jersey Manufacturers Insurance Company (NJM). When this letter went unanswered, Waters' counsel again wrote to NJM who responded on October 24, 1986, indicating that the case would be listed on NJM's list in the usual course. On February 11, 1987, the matter was listed on the compensation judge's list as partial # 1; however, it was not moved since NJM wanted additional records. On April 22, 1987, Waters was finally able to continue with the presentation of her witnesses. The matter was recycled for May 13, 1987, however, NJM indicated its expert Dr. Burke was not available and the matter was adjourned.
As of this date Island inexplicably had not produced its expert report, although frequently promised. On April 22, *545 1987, a representative of NJM advised that the report of Dr. Burke would be forwarded prior to the next scheduled hearing. Waters' counsel was promised that Island would inform him by telephone exactly when Dr. Burke would appear. The matter was relisted for June 3, 1987, however, the promised telephone call was not made and the report was not supplied. Since the report is dated April 27, 1987, no excuse appears for counsel's failure to supply it or for the compensation judge's tacit sanction of this egregious conduct. Island had all of Waters' medical evidence while Waters had nothing.
On June 3, Waters' counsel, who appeared at each prior listing and who actually tried the proceedings to that date, was required to attend Superior Court ordered depositions involving nurses, doctors and five attorneys. Since Island's counsel[1] had failed to give notice of Dr. Burke's time of appearance and had not supplied his report, trial counsel sent his associate who, unfamiliar with workers' compensation practice and procedure, appeared in the court house building at 8:50 a.m. and waited in the hall. He apparently stepped into the assigned judge's court room moments after the call of the list began. Waters' case was called and he remained in the court room.
The novice associate explained trial counsel's dilemma but was denied a postponement and ordered to proceed. This was the first postponement requested by Waters from December 1985 to June 1987. Waters' trial counsel telephoned the judge and urged him to reconsider the denial of the requested continuance. He emphasized his need to review the physician's report and conduct the critical cross-examination. The trial judge was unyielding and directed the proceeding to continue. He then allowed Dr. Burke's medical testimony and after completion of the direct and cross-examination of the physician, permitted trial counsel's associate to place on the record his objections to the proceedings including the fact that he received the April 27, *546 1987 medical report only moments before Dr. Burke's direct testimony commenced. The judge stated:
Well, Counsel, this is the number one case on the list. It is a partially tried case, and therefore concerns priority. As to your complaint that you weren't notified, you ought to know from practice as well in this division that there's no formal notice required to be produced. If you wanted to do that, you could have ascertained the list from Mr. MacDermid[2] and requested an adjournment then. You did not in fact do that. This is the number one written case. You missed the call, and appeared late. The doctor was already en route and your adversary was here, and it seemed only fair to me. And also, there's no requirement that you review the doctor's report in advance. So I don't see any merits from the argument. But as far as my proceeding with the case, you have to understand that the Supreme Court of this State, of this division and the Administrative Office all will proceed with the same rule, which is justice delayed is justice denied. It's all part of my job. As to the conclusion, I don't see anything that's manifested on the fair proceeding today. It's my understanding, Mr. Ferrara, that the license from the State of New Jersey to practice law, you appeared here, the doctor was here, and no steps were taken in advance in order to adjourn the matter, and I see no reason why it should be adjourned. I see no point for the doctor to have to come in a second time. He was already here. The doctor was here for about a half hour before he took the stand. I see no reason I shouldn't take his testimony. His testimony will remain on the Record. [Emphasis in original].
The detailed procedural history, Island's numerous adjournments and the communications between the parties respecting Dr. Burke's report are not contested. Island's position is simply that Waters is not entitled to recover and hence the dismissal should be upheld. We therefore examine Island's failure to produce its medical expert's report before the June 3 hearing; the resultant prejudice to Waters occasioned by the judge's failure to continue the matter as requested, and his requirement that an associate who was inexperienced and unfamiliar with compensation practice, heart cases and with this case in particular, proceed with the extremely difficult cross-examination of Island's medical expert.
The primary focus of the administration of justice, be it in the traditional courts of justice or before administrative agencies, is the same: the delivery of quality justice, the *547 elements of which are (1) due process or fairness which includes an opportunity for adequate pretrial preparation; (2) expeditious disposition, and (3) economically effective operation. The court must balance these elements and never favor the latter two above the first, fair play. Georgis v. Scarpa, 226 N.J. Super. 244 (App.Div. 1988).
Preliminarily, we observe that a workers' compensation judge is not strictly bound by rules of evidence and procedure but must respect and insure due process and fundamental rights of litigants. Jasaitis v. City of Paterson, 48 N.J. Super. 103, 109 (App.Div. 1957), aff'd 31 N.J. 81 (1959). These fundamental rights entitle all parties in workers' compensation proceedings to present testimony in critical areas such as medical issues involving causation. Vaughn v. State, 151 N.J. Super. 251, 253-254 (App.Div. 1977). Inherent in this right is not only the ability to present medical testimony but the right to cross-examine adverse experts. Paco v. American Leather Mfg. Co., 213 N.J. Super. 90, 93 (App.Div. 1986).
Cross-examination is perhaps the single, most important tool of the trial lawyer; the effective use of this tool in the hands of the skilled examiner often is the difference between victory and defeat in the court room. Professor Wigmore said this of cross-examination: "For two centuries past, the policy of the Anglo-American system of evidence has been to regard the necessity of testing by cross-examination as a vital feature of the law.... [I]t [Cross-examination] is beyond any doubt the greatest legal engine ever invented for the discovery of truth." 5 Wigmore, Evidence § 1367 (Chadbourn rev. 1974) at page 32. See also Georgis, 226 N.J.Super at 256; Perry v. Crunden, 79 N.J. Super. 285, 292 (Law Div. 1963).
The rules pertaining to workers' compensation hearings provide that medical reports are to be exchanged at the pretrial conference, N.J.A.C. 12:235-5.9, and they require that a party give the judge and opposing counsel a written curriculum vitae of its witness prior to that witness's testimony. N.J.A. *548 C. 12:235-5.10(j); (emphasis supplied). While the trial judge correctly noted in his decision denying the continuance that there is no "requirement" in the workers' compensation rules that counsel review an adverse medical expert's report prior to the testimony, there are, however, numerous New Jersey cases addressing the failure of civil litigants to produce the name and/or report of their expert witnesses and appropriate sanctions for failure to do so. R. 4:17-4(e) of the Rules of Civil Procedure adopted in September 1987, allows a party to move for an order fixing a specific date for furnishing the other party's expert's name and report and further provides that as a part of its order, the court may prohibit the expert witness from testifying unless the report is provided pursuant to its order. See also R. 4:17-7.
In Fanfarillo v. East End Motor Co., 172 N.J. Super. 309, 312 (App.Div. 1980), this court held that a party has a continuing duty to disclose the opinions of his expert and a failure to do so may, in the judge's discretion, result in the exclusion of that expert's opinion evidence. Even if no written report is prepared, we have held that a party must disclose the substance of its expert's opinion in advance of trial. Clark v. Fog Contracting Co., 125 N.J. Super. 159, 161-162 (App.Div.), certif. den. 64 N.J. 319 (1973). The purpose of supplying an expert's report in advance is to "forewarn the propounding party of the expected contents of the expert's testimony in order to enable preparation to counter such opinions with other opinion material." Maurio v. Mereck Construction Co., Inc., 162 N.J. Super. 566, 569 (App.Div. 1978).
Most of the litigation pertaining to production of expert witness reports is initiated by the party whose expert witness was precluded from testifying and appellate courts are understandably reluctant to uphold such a drastic sanction. See, e.g., Hamilton v. Letellier Construction Co., 156 N.J. Super. 336, 338 (App.Div. 1978) (order of exclusion was abuse of discretion since it was tantamount to dismissal of plaintiff's claim); Maurio, 162 N.J. Super. at 570 (reversed trial court decision because *549 we were reluctant to visit the consequences of an attorney's dereliction upon his client). In instances, however, where a party has failed to produce its expert report despite repeated orders or demands, this court has upheld the trial court decision barring the expert from testifying. See, e.g., Calabrese v. Trenton State College, 162 N.J. Super. 145, 151 (App.Div. 1978), aff'd 82 N.J. 321 (1980). See also Hamilton, 156 N.J. Super. at 338 (if information regarding the expert report is willfully, or deliberately withheld, a court should take "more stringent measures"). In O'Connor v. Altus, 67 N.J. 106, 130 (1975), the Supreme Court held that plaintiff's psychiatric expert should not have been allowed to testify on the grounds that a copy of his report was not submitted to the adverse party, despite several demands therefore. Respondents, who prevailed both at trial and on appeal were obviously not prejudiced by the admission of the expert's testimony so it was unnecessary for the Supreme Court to fashion a remedy.
In Gilborges v. Wallace, 153 N.J. Super. 121 (App.Div. 1977), aff'd 78 N.J. 342 (1978), plaintiff called an actuarial expert to testify. The expert was contacted by plaintiff the previous evening and had no written report. The trial judge allowed the expert to testify and respondent appealed. We upheld the trial court's ruling, finding that the trial court equitably treated plaintiff's last minute expert witness in a manner which did not result in any prejudice to respondents. The trial court extended the time for cross-examination until defense counsel had an opportunity to prepare by recessing while the witness gave defense counsel a memorandum made to prepare for testimony and an oral statement of his conclusions including the theory upon which they were based. Defense counsel then had a three-day weekend to prepare for cross-examination. Id. at 135-136.
In essence, the cases demonstrate that, absent flagrant violations of an order to produce an expert's report, courts are reluctant to sanction the delinquent party by precluding an expert witness from testifying. However, the court must consider *550 the prejudice to the adverse party who has no advance time to review the expert's report and should allow a continuance or even a mistrial to ensure a just result. See Gittleman v. Central Jersey Bank and Trust Co., 103 N.J. Super. 175, 179 (App.Div. 1967), rev'd, dissent aff'd 52 N.J. 503 (1968). In effect, the court is called upon to balance expedient disposition against fair play and in almost every instance the latter prevails.
While New Jersey court rules do not directly control the actions of a compensation judge, nevertheless, the Supreme Court observed in City of Hackensack v. Winner, 82 N.J. 1, 29 (1980), "since there are pronounced similarities in the exercise of judicial and quasi-judicial powers, it has been recognized that court-fashioned doctrines for the handling of litigation do in fact have some genuine utility and relevance in administrative proceedings." Id. at 29. In Hyman v. Essex Cty. Carpet Cleaning Co., 157 N.J. Super. 510 (App.Div. 1978), we observed:
We have no doubt at all as to the affirmative answer to the first of these inquiries. Irrespective of the absence of express statutory authority and a one-year limitation imposed upon such a reopening in certain circumstances, N.J.S.A. 34:15-54, it is abundantly clear that the Division has the inherent power, "comparable to that possessed by the courts (R.R. 4:62-2 [now R. 4:50]), to reopen judgments for fraud, mistake, inadvertence, or other equitable ground." Beese v. First National Stores, 52 N.J. 196, 200 (1968). See also Estelle v. Red Bank Bd. of Ed., 14 N.J. 256 (1954); Stone v. Dugan Brothers of N.J., 1 N.J. Super. 13 (App.Div. 1948).
On the other hand, it is equally clear that a decision to reopen must not be arbitrary or based on whim. The presence of a legally adequate motivating element must be manifest. We are satisfied, as we were almost three decades ago in Stone, supra, that the practice in the Division is this respect ought to be tailored after that to which the courts adhere in response to R. 4:50. It follows that in consideration of such procedure, attention to the equities involved is imperative. Beese v. First National Stores, supra 52 N.J. at 200-201. [Id. at 516].
Here we find the compensation judge's actions a clear abuse of discretion by his refusal to continue the matter for another cycle. Island agreed to produce the name and report of its expert witness in the pretrial memorandum dated June 24, 1985. On April 22, 1987, Island agreed and the judge *551 ordered Island to produce its expert's name and report before the next hearing scheduled for May 13, 1987. It did not. Dr. Burke prepared his written report sometime before April 27, 1987, and apparently signed it on that date. By June 3, 1987, when Dr. Burke appeared to testify, shockingly, Island had still not given Waters' a copy of his report. Island's failure to produce the report is inexcusable. Waters fully and promptly prepared and presented this case. Waters was given a definite date by which a report was to be received and in light of the impact this witness's testimony might have on Waters' claim, the compensation judge should have made some accommodations for Waters' counsel, most probably by continuing the case to another cycle.
None of the reasons advanced by the compensation judge are even marginally significant enough to justify proceeding immediately with Dr. Burke's testimony. Trial counsel's associate, because of his inexperience, mistakenly waited in the wrong place and missed part of the call. We cannot see how justice is served by punishing Waters or counsel for this understandable mistake when balanced against the carrier's egregious actions, violation of the compensation rules and its inordinate delay. Dr. Burke had apparently not yet arrived and probably could have been called and told not to appear. At worst, the only time Dr. Burke would have wasted would be a round trip to the compensation court and in that event costs could have been assessed against the appropriate party. The judge's comment that "justice delayed is justice denied" is wholly inappropriate given the numerous delays and favored adjournments granted Island.
Here, Island delayed, sought and received continuances and failed to comply with concepts of fundamental fairness in dealing with Waters' counsel. Ironically, it is the diligent Waters who was punished. It is more accurate to say justice in the final phase of this compensation trial was rushed so as to deny Waters her day in court.
*552 After careful review of the medical testimony and the judge's opinion, we find the judge's decision allowing Dr. Burke to testify without giving Waters' counsel an opportunity to review his report clearly prejudicial. We observe that the judge quoted extensively from Dr. Burke's testimony to support his finding of no causation. Cf. Nelson v. American Container Corp., 145 N.J. Super. 448 (App.Div. 1976) (harmless error where employer was unable to complete the cross-examination of the injured workman where it was apparent the compensation judge placed no substantial reliance on the employee's testimony). Additionally, the associate's unfamiliarity with the prior testimony in the case and with workers' compensation heart cases in general clearly resulted in prejudice to petitioner. Indeed, the most experienced and talented practitioner would not undertake such a task of cross-examination without extensive preparation. To order an associate unfamiliar with a case to proceed may be appropriate under some conditions, however, under these circumstances it was a gross abuse of discretion.
As the court opined in Allegro v. Afton Village Corp., 9 N.J. 156 (1952):
[C]ourts exist for the sole purpose of rendering justice between parties according to law. While the expedition of business and the full utilization of their time is highly to be desired, the duty of administering justice in each individual case must not be lost sight of as their paramount objective. [Id. at 161].
In Santos v. Estate of Santos, 217 N.J. Super. 411 (App.Div. 1987), we recounted what Judge Bigelow said in Pepe v. Urban, 11 N.J. Super. 385 (App.Div.), cert. den. 7 N.J. 80 (1951).
We must never forget that courts exist for the sole purpose of rendering justice according to law. No eagerness to expedite business, or to utilize fully the court's time, should be permitted to interfere with our high duty of administering justice in the individual case. Id. at 389.
See also Allegro, 9 N.J. at 161. There is an absolute need to remember that the primary mission of the judiciary is to see justice done in individual cases. Any other goal, no matter how lofty, is secondary.
We who control the scales of justice must always keep them evenly balanced so those seeking a resolution of their disputes *553 before us receive the full measure of justice due them. In that quest for justice, let us always remember Judge Jayne's admonition, "expedition must supplant languor but never at the expense of justice."
Waters' procedural due process rights were clearly violated by the failure to allow her a brief continuance to prepare for the crucial cross-examination of Island's expert, Dr. Burke. Accordingly, the judgment under review must be reversed and a new trial ordered in accordance with the parameters established in Hellwig v. Rast, 110 N.J. 37 (1988).
REVERSED.
NOTES
[1] Island's counsel on appeal was substituted after the trial.
[2] Apparently a reference to NJM's counsel.