NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO.  A-4837-18T2

JAMES P. MCGORY,

     Petitioner-Appellant,

v.

SLS LANDSCAPING,

    Respondent-Respondent.

_____

**APPROVED FOR PUBLICATION**

**May 8, 2020**

**APPELLATE DIVISION**

Argued telephonically March 23, 2020 –
Decided May 8, 2020

Before Judges Ostrer,[1] Vernoia and Susswein.

On appeal from the New Jersey Department of Labor
and Workforce Development, Division of Workers'
Compensation, Claim Petition No. 2019-6582.

Edward J. Magram argued the cause for appellant
(Smith Magram Michaud Colonna, PC, attorneys;
Edward J. Magram, on the briefs).

Brian O. Sumner argued the cause for respondent
(German, Gallagher & Murtagh, PC, attorneys; Yana
N. Shapiro, of counsel; Brian O. Sumner, on the
brief).

---

[1]  Judge Ostrer did not participate in oral argument.  The parties consented to
Judge Ostrer's participation in the decision without further oral argument.

The opinion of the court was delivered by

VERNOIA, J.A.D.

Petitioner James P. McGory filed a workers' compensation claim petition alleging he fractured his right foot when he jumped from a loft while working for respondent SLS Landscaping at respondent's premises. Petitioner appeals from a May 29, 2019 order dismissing his claim petition without prejudice and a July 10, 2019 order dismissing the petition with prejudice. Based on our review of the record, we are convinced the orders were entered in error, and we reverse.

I.

Petitioner's arguments on appeal center on his claim the judge of compensation violated his procedural due process rights and applicable procedural rules by entering the dismissal orders. Our summary of the pertinent facts therefore focuses on the proceedings before the judge.

Petitioner's Claim Petition and Motion For Medical and Temporary Disability Benefits

In response to petitioner's claim petition, respondent filed an answer denying petitioner's injuries arose out of and in the course of his employment. Respondent asserted petitioner suffered his injuries while jumping off a ladder at his home.

Petitioner also filed a motion for medical and temporary disability benefits supported by his affidavit explaining that, while working for respondent at its premises, he jumped from a loft after retrieving a bucket and immediately felt pain in his right foot. Petitioner further stated he refused medical treatment offered by his supervisor, Nicole Caruso, because he was embarrassed and thought if he put ice on his foot his injury "would be better." He asserted he returned home; realized his injury was more serious than he first believed; and sent a text message to Caruso advising he was going to the hospital, the incident was his fault, and he was "going to use [his] personal health insurance." Caruso thanked him for the "update" and requested he "[k]eep [her] posted."

Petitioner also stated he went to two health care providers, an urgent care center and then a hospital, and reported to each he "injured [his] foot when [he] fell off a roof while cleaning gutters at [his] home." Petitioner said he made those reports because he feared if he reported he was injured at work, he might "face punishment at [his] workplace," and he lacked "understanding of [w]orkers' [c]ompensation insurance or [his] rights in that regard." He noted that when he told Caruso he intended to use his personal health insurance, "she did not advise [him] that to do so was improper." The medical care providers' examinations revealed a fracture of petitioner's right foot.

In his affidavit, petitioner further detailed that, after returning home from the hospital, he told his parents he misinformed the medical care providers about the cause of his injuries, and his parents explained "how [w]orkers' [c]ompensation works" and told him he should have accurately reported what occurred. Petitioner said he told respondent what occurred and "contacted both medical facilities to correct [his] record." Petitioner also stated respondent authorized treatment by Dr. Mark Schwartz, an orthopedic specialist, who placed petitioner's foot in a cast, but respondent's [w]orkers' [c]ompensation carrier later denied his claim because he reported to the medical care providers he was injured at home.

The April 17, 2019 Hearing on Petitioner's Motion for Medical and Temporary Disability Benefits

During an April 17, 2019 hearing on petitioner's motion for medical and temporary disability benefits, the judge first addressed respondent's opposition to petitioner's motion and affidavit. Respondent's counsel acknowledged petitioner was employed by respondent and at work on the day of the alleged injuries, but she explained compensation was denied because petitioner informed medical care providers he was injured at home.

The judge questioned whether respondent intended to assert petitioner engaged in fraud, and respondent's counsel said she did not anticipate filing a

"fraud motion." The judge further inquired whether respondent disputed the incident occurred at work, and he observed that "[b]ecause of the possibility of an allegation of fraud," petitioner "could face a dynamic where he has a right to remain silent." The judge reiterated that if there was "any possible suggestion of a fraud implication . . . [p]etitioner has potential rights to remain silent." The judge ordered respondent's counsel to immediately produce Caruso as a witness, directed petitioner "step down" from the witness stand, and advised petitioner he would not "be testifying first."

The judge next explained he accelerated the scheduling of the hearing on petitioner's motion for medical and temporary disability benefits because respondent did not supply affidavits from witnesses in opposition to the motion. The judge noted respondent provided only a certification from its counsel, which did not include sufficient competent information enabling a review of respondent's opposition to petitioner's motion. The judge observed petitioner's affidavit "may constitute a prima facie case and may be a sufficient basis for" an order granting the requested relief, and the judge therefore provided respondent an opportunity to present witnesses in opposition to petitioner's supporting affidavit.

Respondent's counsel first called Sam Waddell, respondent's owner, as a witness. He testified petitioner was employed by respondent on the day of the

incident. Waddell was not on the premises when the incident occurred, but manager Evan Powell notified him by telephone petitioner had climbed a ladder to retrieve tools and "jumped off instead of going back down the ladder." Powell also said he tried to get petitioner to see a doctor, but petitioner refused. Waddell told Powell to have petitioner wait for Waddell to return to the premises, but petitioner left before Waddell arrived. Waddell also confirmed that if an injury "happened at work, and it's verified, then it would be covered under [w]orkers' [c]ompensation."

Caruso also testified, confirming she was at respondent's premises on the day of the incident but did not see petitioner jump from the loft. Instead, she heard the sound of the impact when petitioner landed and went to ask if he needed assistance. Caruso observed petitioner "in a lot of pain," and she offered petitioner medical care, which he declined. Caruso believed another employee saw petitioner jump. Caruso completed an incident report that Powell signed. She confirmed receipt of petitioner's text message advising he was going to the hospital for treatment and had his own insurance.

Following the testimony of respondent's witnesses, the judge said he did not understand why petitioner would jump from the loft. He asked petitioner's counsel if petitioner would testify, and counsel represented petitioner would testify and explain why he jumped from the loft. The judge said he "look[ed]

6

forward to hearing that testimony." The judge also renewed his inquiries concerning whether respondent believed "fraud" applied, and respondent's counsel advised the matter was not being investigated for fraud.

The judge said he would not immediately decide whether petitioner presented a prima facie entitlement to medical and temporary disability benefits, "even in the absence of" certifications from respondent's witnesses, because respondent presented Caruso's and Waddell's testimony. The judge also said he did "not comprehend the jumping" and the "dynamic . . . as why someone jumps down," and he questioned whether "horseplay" or "some other motivation" played a role in the incident. Petitioner's counsel offered to make a proffer to address the judge's concerns, but the judge declined.

The judge concluded the April 17, 2019 hearing, stating, "I am one who believes we need to know more. I'm not rushing the judgment today" because this was "not . . . a clear[-]cut case." The judge adjourned the hearing on petitioner's motion for medical and temporary disability benefits. The continuation of the hearing was scheduled for May 29, 2019, and the judge advised the parties to have their witnesses present.

The May 29, 2019 Continuation of the Hearing on Petitioner's Motion

On the day prior to the May 29, 2019 hearing, respondent filed a motion to dismiss the claim petition "for failure to sustain burden of proof."

7

Supported by its counsel's certification, respondent asserted the medical records showed petitioner reported he was injured at home and therefore his injuries were not work-related or compensable. In the alternative, respondent argued the conduct petitioner alleged resulted in his injuries was willfully negligent, or constituted horseplay, and therefore was not compensable.

At the May 29, 2019 hearing, respondent's counsel restated the reasons supporting respondent's dismissal motion. Petitioner's counsel argued petitioner had not had the opportunity to present any evidence; petitioner had a right to testify; and petitioner was prepared to testify at the prior hearing and was again present and available to testify that day. Petitioner's counsel asserted that, until petitioner testified, "everything that has been said is mere speculation" and there was no evidence of horseplay or willful misconduct. Petitioner's counsel acknowledged petitioner acted foolishly but contended petitioner's testimony and the other evidence would establish "no intent to defraud," and no willful negligence or horseplay. Petitioner's counsel asserted, "once [petitioner] testifies[,] I'm certain Your Honor will see that."

After both sides summarized their positions, the judge explained he reviewed the transcript of the April 17, 2019 proceeding and the word "fraud"

appeared twenty-two times.[2]  The judge also queried petitioner's counsel as to how petitioner would respond to certain questions about the incident and petitioner's reports to the medical care providers, and he reviewed the parties' proposed exhibits, noting he was "not making any determinations on entry into evidence . . . today."

The judge said he had been presented with respondent's motion to dismiss the petition, and, "having heard [Caruso's and Waddell's] testimony . . . [he] seriously consider[ed] [petitioner's counsel's] emphasis that there is a need for [petitioner's] testimony."  The judge said he was "not rushing to judgment," but he noted the case presented a "possibility that there is applicability of the word 'fraud.'"  He ordered petitioner's counsel to include in his opposition to respondent's motion "legal citations to cases where the facts in the case at bar are the facts in the case."

The judge further ordered petitioner's opposition to respondent's just-filed motion address cases where: a petitioner's injuries were caused by

---

[2]  During the April 17, 2019 proceeding, the judge raised the fraud issue and he used the term "fraud" fourteen times.  Respondent's counsel uttered the word "fraud" twice, each time to advise the judge petitioner's claim would not be investigated for fraud.  Petitioner's counsel used the term twice to advise the judge he had no "concern" about a fraud claim.  During his cross-examination, Waddell used the term twice to describe what he understood was the reason petitioner's claim was denied, and petitioner's counsel used the term twice in questioning Waddell about that testimony.

jumping; a petitioner violated an employer's request to stay at the scene of the incident; and the petitioner claimed he or she had personal health insurance but only had Medicaid. The judge opined the case presented "questions that may rise to the level of questionable conduct," and, although he had not yet heard petitioner's testimony, he opined petitioner's view was "let the taxpayers pay for my health insurance. Let the taxpayers pay me [temporary disability benefits.] And oh, by the way, then I think my [e]mployer should incur all of the costs for such."

Respondent had not alleged petitioner committed fraud, and its counsel informed the judge she did not intend to file a fraud motion. Nonetheless, the judge told respondent's counsel, "if you are going to use the 'fraud' word, use the 'fraud' word. Don't tap dance." The judge declared, "[w]e're going to have an all-out hearing," and he was "going to get to the bottom of this." The judge also reiterated he took "seriously" that he had "not heard testimony yet." The judge then read petitioner's affidavit supporting his motion for medical and temporary disability benefits, and he noted that when petitioner "ultimately presents testimony, we're going to figure this all out."

Although the judge declared there was a need for a hearing, he proceeded to make findings concerning petitioner's affidavit. The judge found petitioner's statement he advised the health care providers he was injured at

A-4837-18T2

home "reveals a lie." Although petitioner's counsel had previously explained petitioner might testify he understood his Medicaid coverage constituted "personal health insurance," the judge, prior to hearing petitioner's testimony, found petitioner's text message to Caruso—stating he would use his own personal insurance—was a lie. The judge said "some in America might think" Medicaid is personal health insurance, but he "did not." The judge explained "taxpayers pay for Medicaid. This young man does not." The judge found petitioner's belief Medicaid was personal health insurance "is a lie."

Following his review and commentary concerning the contents of petitioner's supporting affidavit, and before hearing any testimony from petitioner, the judge made the following credibility determinations and factual findings concerning the occurrence of the incident resulting in petitioner's injuries:

> Today I find that the [p]etitioner is a multiple liar. I find that the [p]etitioner jumped. I find that the [p]etitioner horse-played. I find that the [p]etitioner is a multiple liar to multiple people. Even his parents told him to be honest.

The judge was not done. Although he said he intended to have a full hearing, the judge never afforded petitioner an opportunity to testify and sua

sponte dismissed the claim petition without prejudice.[3]  The judge explained he had "an initial impression . . . this [p]etitioner should perhaps seriously consider saying: [g]ood-bye to [his] case."  The judge further declared "[t]here is just . . . no way I can condone continuing this case."

Moreover, the judge conditioned the reinstatement of the case on petitioner proving he is honest.  The judge told petitioner's counsel, "If you can prove to me he's honest, you can begin to present your case.  If you cannot prove to me he's honest, then under the circumstances, the [m]otion to [r]estore is questionable."[4]  The judge said he had "a multiple liar who admits he's a multiple liar who jumps from a roof and now wants everybody else to pay for it."  Based on those findings, gleaned solely from a review of petitioner's affidavit, the judge proclaimed the case "doesn't rise to [the] level" where he had "to hear the evidence."  The judge then denied petitioner's request to

---

[3]  The judge later noted he was not taking any action on respondent's motion to dismiss the claim petition with prejudice that was filed the previous day.  The judge told respondent's counsel if she wanted the petition dismissed with prejudice, he "might find it's based on fraud and at that point and time, you never know what [he] might do."

[4]  The judge's reference to a "motion to restore" is perplexing because no motion to restore had been filed.  It appears the judge referred to a possible future motion, given the judge had just announced his sua sponte dismissal of the claim petition.  Petitioner did not subsequently file a motion to restore.

testify, explaining petitioner "potentially faces a much more significant review than will occur in this courtroom" if he chose to do so.

The parties appeared before the judge on petitioner's motion for medical and temporary disability benefits, but the judge entered a sua sponte order dismissing petitioner's claim petition.

The June 19, 2019 Proceeding

The judge next convened a hearing on June 19, 2019, at the outset of which petitioner's counsel noted the case had been dismissed and petitioner instructed his counsel to appeal, and petitioner's counsel asked the judge the reason for the proceeding. The judge explained the May 29 dismissal was without prejudice, the parties were free to file motions for further relief, and, based on a conference call with counsel the previous day, he "believe[d] [counsel] deserve[d] more information apparently."

Although neither party had filed a motion subsequent to the May 29 dismissal order, the judge stated "there is a new motion," referring to respondent's motion to dismiss with prejudice. As noted, however, respondent's motion to dismiss with prejudice was filed prior to the May 29 hearing and entry of the sua sponte order dismissing the claim petition without

prejudice.[5]   The dismissal order permitted the parties to file motions concerning the matter, but respondent did not refile its motion to dismiss with prejudice following entry of the order.

In fact, respondent's counsel told the judge she did not understand how her motion to dismiss was "viable" because he dismissed the case after the motion was filed.  She also stated she was not asking the judge to dismiss the claim petition with prejudice "at this time."  Respondent's counsel advised the judge she was "just . . . trying to understand how . . . there [can] be a motion hearing if the case is . . . dismissed."

Nonetheless, the judge determined the purported "new motion" provided "the basis for further judicial review."  The judge then scheduled a hearing on respondent's motion to dismiss with prejudice, and he directed the hearing would take place at the location on respondent's premises petitioner claimed he was injured.  The judge ordered respondent's witnesses would testify first, and he advised counsel "you can tell me what you want me to do that day."  The judge advised petitioner could file a motion to restore the claim petition, and

---

[5] On May 29, 2019, prior to entry of his sua sponte dismissal order, the judge explained petitioner would have an opportunity to file opposition to the motion.  Indeed, the judge directed what issues the petitioner's opposition should address.  The judge did not decide respondent's motion on May 29, 2019, but instead opted to sua sponte dismiss the claim petition without prejudice.

he stated petitioner's incomplete affidavit supporting his motion for medical and temporary disability benefits "did not constitute a prima [facie] case" and petitioner's lack of prosecution "continues."[6]

The judge said he was not restoring the claim petition, but instead was addressing respondent's motion to dismiss with prejudice. He directed "oral argument or further proceedings" on July 10, 2019 on respondent's motion to dismiss with prejudice. Petitioner's counsel advised the judge petitioner had instructed him to appeal the May 29, 2019 dismissal order, and petitioner was present and available to testify. The judge, however, denied petitioner's offer to testify, stating petitioner would not be permitted to testify because petitioner had not filed a motion to restore the claim petition and petitioner had neither supplemented his affidavit nor addressed the issues raised in respondent's motion to dismiss with prejudice.

The judge "reaffirmed" his order dismissing the claim petition without prejudice and that "[b]oth parties have a right to file motions." The judge said respondent's motion to dismiss with prejudice "remains."

---

[6] Having denied petitioner the opportunity to testify prior to his sua sponte dismissal order, the judge's assertion petitioner's purported "lack of prosecution 'continues'" is unsupported by the record.

Petitioner did not file a motion to restore the claim petition. On July 9, 2019, he filed a notice of appeal with the Appellate Division from the judge's May 29, 2019 dismissal order. The judge conducted the scheduled July 10 hearing on respondent's motion to dismiss with prejudice. Petitioner's counsel advised the judge petitioner would not testify, and respondent did not present any witnesses.

The judge rendered a decision on the merits of respondent's motion, relying on petitioner's affidavit; the parties' exhibits; and the testimony of Caruso and Waddell. In short, the judge found petitioner lied when he told the medical care providers and his mother he was injured at home, and the judge determined petitioner was injured at work at respondent's premises. The judge had not heard any testimony concerning the manner in which petitioner was actually injured, but the judge found the injuries were not compensable because they resulted from petitioner's willful conduct - jumping. The judge further noted petitioner had been provided the opportunity to move to restore the claim petition and testify at the hearing, but he declined to do so.

Petitioner's counsel explained petitioner did not testify because an appeal of the dismissal order had been filed the previous day, and, as a result,

the judge lacked jurisdiction to conduct the hearing.[7]  Petitioner's counsel further asserted the judge lacked jurisdiction because respondent did not refile the motion to dismiss with prejudice following the May 29, 2019 dismissal order, and, therefore, there was no motion pending before the judge.  The judge disagreed, stating he "reopened" the case in June and thereafter afforded the petitioner the opportunity to testify, which petitioner declined.  The judge also acknowledged sending an email to counsel the previous day, stating "[t]he [c]laim [p]etition is dismissed."

The judge entered an order dismissing the claim petition with prejudice. This appeal followed.

## II.

"Appellate review of workers' compensation cases is 'limited to whether the findings made could have been reached on sufficient credible evidence present in the record . . . with due regard also to the agency's expertise.'" Hersh v. Cty. of Morris, 217 N.J. 236, 242 (2014) (quoting Sager v. O.A. Peterson Constr., Co., 182 N.J. 156, 164 (2004)).  Deference is given to the factual findings of a judge of compensation who has the opportunity to assess the witnesses' credibility from hearing and observing their testimony.

---

[7]  The record shows the judge had been provided with a copy of petitioner's notice of appeal; the judge referred to the contents of the notice of appeal during the July 10, 2019 hearing.

A-4837-18T2

Lindquist v. City of Jersey City Fire Dep't, 175 N.J. 244, 262 (2003). Those findings should not be reversed unless they are "manifestly unsupported by or inconsistent with competent relevant and reasonably credible evidence as to offend the interests of justice." Ibid. (quoting Perez v. Monmouth Cable Vision, 278 N.J. Super. 275, 282 (App. Div. 1994)). Yet, the judge's "interpretation of the law and the legal consequences that flow from established facts are not entitled to any special deference." Manalapan Realty, LP v. Twp. Comm. of Manalapan, 140 N.J. 366, 378 (1995).

Petitioner claims the judge's entry of the orders dismissing the claim petition without and with prejudice violated his due process rights. He asserts the judge sua sponte entered the initial dismissal order while depriving him of the opportunity to testify and later entered the final order after the case was dismissed, while no motion was pending, and while the judge lacked jurisdiction because an appeal had been filed.

A judge of compensation "is not strictly bound by rules of evidence and procedure but must respect and insure due process and fundamental rights of litigants." Waters v. Island Transp. Corp., 229 N.J. Super. 541, 547 (App. Div. 1989) (citing Jasaitis v. City of Paterson, 48 N.J. Super. 103, 109 (App. Div. 1957)). Our Supreme Court has observed, "[d]ue process is not a fixed concept . . . but a flexible one that depends on the particular circumstances,"

but "[f]undamentally, due process requires an opportunity to be heard at a meaningful time and in a meaningful manner." Doe v. Poritz, 142 N.J. 1, 106 (1995). We have held that, in accordance with due process principles, the opportunity to be heard "includes not only the right to cross-examine the adversary's witnesses but also the right to present witnesses to refute the adversary's evidence." Paco v. Am. Leather Mfg. Co., 213 N.J. Super. 90, 97 (App. Div. 1986).

The judge's sua sponte entry of the May 29, 2019 order dismissing the claim petition without prejudice violated petitioner's fundamental due process right to present evidence supporting his claim. See ibid. During the May 29 hearing, the judge first said he would provide petitioner with a full hearing at which petitioner would be permitted to testify, but he later said petitioner's claim petition "doesn't rise to [the] level" where he had "to hear the evidence." The notion that a case where the credibility of the witnesses is an issue and the underlying facts are disputed can be decided without the need to "hear the evidence" is inconsistent with the fundamental fairness to which every litigant in every litigated matter is entitled.

Moreover, the judge's statements and his decision to dismiss petitioner's claim, even without prejudice, prior to hearing petitioner's testimony violated the "fundamental tenet of our Anglo-American system of justice that no court

19

or administrative agency is so knowledgeable that they can make fair findings of fact without providing both sides the opportunity to be heard." Id. at 97. For those reasons alone, we reverse the court's May 29, 2019 order dismissing the claim petition without prejudice.

The judge also erred by making credibility determinations and findings of fact on the merits of petitioner's claim petition based solely on the judge's interpretation of petitioner's affidavit, without hearing petitioner's testimony, and after only hearing Caruso's and Waddell's testimony. Waddell and Caruso did not witness the incident and could not describe the manner in which petitioner jumped, but the judge, without hearing petitioner's version of the incident, dismissed the claim petition based solely on his interpretation of the term "jumped" based on a dictionary definition of the term. Any proper determination of the merits of petitioner's claim petition required a consideration of testimony concerning the manner and circumstances surrounding the jump that caused petitioner's injury. We have determined "a holding which authorizes a [judge] to decide contested issues of material fact on the basis of conflicting affidavits, without considering the demeanor of witnesses, is contrary to fundamental principles of our legal system." Conforti v. Guliadis, 128 N.J. 318, 322 (1992) (citation omitted).

Ignoring this basic principle, during the May 29, 2019 hearing, the judge not only made findings petitioner's injury was not compensable because he "jumped," the judge also found petitioner was a liar and conditioned restoration of petitioner's claim petition on proof petitioner is "honest." Respondent cites to no legal authority supporting the judge's imposition of such a standard, and, as would be expected, we could find none. There is no requirement a petitioner first establish he or she is honest before obtaining a hearing on a claim petition. It is fundamental that credibility issues are determined only after a full hearing where the petitioner and respondent present their witnesses and testimony.[8]  See ibid.  The judge's requirement

---

[8]  Because the judge chose to dismiss the claim petition, he did not expressly address petitioner's motion for medical and temporary disability benefits. We observe, however, N.J.A.C. 12:235-3.2(f) provides that, under certain circumstances, a prima facie case of entitlement to an award of temporary disability payments may be established by "[a]ffidavits, certifications and medical reports."  A petitioner may prevail on a motion for temporary disability or medical benefits based on the supporting documentation and without a plenary hearing "only if opposing documents are facially insufficient to fairly meet, contradict or oppose the material allegations of the documents [supporting] the motion." Hogan v. Garden State Sausage Co., 223 N.J. Super. 364, 367 (App. Div. 1988).  However, the judge may not weigh the evidence, "but must confine the inquiry . . . to a review of the face of the filed documents."  Ibid.  If there are contested facts, "the [j]udge must give the petitioner the opportunity to present witnesses for respondent's cross-examination and, if petitioner so elects, for direct examination." Ibid.  Where witnesses are presented, "then the [j]udge . . . will decide the motion after weighing all of the evidence properly produced by the parties." Ibid.

petitioner prove he was "honest" in order to reinstate the petition the judge incorrectly dismissed in the first instance finds no support in the law and, in our view, imposed a fundamentally unfair burden on petitioner.

The May 29, 2019 order dismissed the petition without prejudice, and neither party moved for any relief thereafter. Apparently, there were off-the-record conversations between the judge and counsel following the dismissal that resulted, in some manner, in the June 19, 2019 proceeding. The judge, however, did not enter an order reopening the matter, and he reminded the parties in an email the case remained dismissed. Moreover, respondent's counsel told the judge she understood the motion to dismiss with prejudice, which was filed prior to the May 29 dismissal order, was no longer viable and she was not requesting the motion be granted. Undeterred by the counsels' apparent, but understandable, confusion and lack of action, the judge directed a hearing on respondent's motion be held on July 10, 2019.

At the hearing, the judge offered petitioner an opportunity to testify, and petitioner's counsel declined.[9] The judge then found petitioner did not sustain

(continued)
Fundamental fairness requires the same principles apply to the disposition of a claim petition.

[9] Petitioner's counsel argued the court lacked jurisdiction because a notice of appeal had been filed the previous day. Although the filing of a notice of

his burden and dismissed the claim petition with prejudice. Under the unusual circumstances presented, however, we do not find petitioner's decision not to testify constituted a waiver of his right to challenge the court's order dismissing the petition with prejudice or requires an affirmance of the order.

The record is unclear as to the putative purpose of affording petitioner an opportunity to testify at the July 10, 2019 hearing. The judge had previously informed the parties that, at the hearing, he would consider respondent's motion to dismiss and he would first hear from respondent's witnesses. But on July 10, the respondent did not offer any witnesses, and the judge did not request respondent present any witnesses.

Moreover, at the June 19 hearing, the judge rejected petitioner's offer to testify because petitioner had not filed a motion to restore the claim petition. Petitioner did not file a restoration motion prior to the July 10 hearing and,

(continued)
appeal generally deprives a trial court or administrative agency of jurisdiction, R. 2:9-1(a), that is not the case where a notice of appeal is improvidently taken from an interlocutory order, Savage v. Weissman, 355 N.J. Super. 429, 435 (App. Div. 2002). The May 29, 2019 order dismissing the claim petition without prejudice is an interlocutory order because it allowed the filing of a motion to restore the claim petition. See, e.g., Scalza v. Shop Rite Supermarkets, 304 N.J. Super. 636, 638 (App. Div. 1997) (explaining order of dismissal without prejudice is not a final order where it provides for vacation of the dismissal). Thus, the notice of appeal was improvidently filed and did not deprive the judge of jurisdiction. Petitioner's counsel's argument to the contrary was incorrect.

based on the judge's prior ruling, could not have expected the judge would allow him to testify during the hearing. Additionally, the judge had directed petitioner's claim petition would be restored only if he could prove he was honest. As noted, that standard finds no support in the law and was incorrectly imposed by the judge. As a result, petitioner's failure to sustain that burden at the July 10 hearing—by deciding not to testify—did not support or permit the judge's dismissal of the claim petition with prejudice.

Long before the judge offered petitioner the opportunity to testify at the July 10 hearing, the judge found, as a matter of fact, petitioner was not only a liar, but a "multiple liar." And the judge made that finding based solely on his review of petitioner's affidavit. In other words, the judge predetermined the issue of petitioner's credibility at the outset of the matter, and throughout the proceedings he oft-repeated his determination petitioner was dishonest and not credible. In doing so, the judge prejudged the matter and demonstrated he could not fairly consider any testimony petitioner might have offered at the July 10 hearing. Thus, petitioner's decision not to testify is of no moment. The record permits only one conclusion: the judge could not have fairly considered the testimony because the judge had already determined, without hearing one word of petitioner's testimony, petitioner was not credible.

The record also shows the judge predetermined the merits of the case from the outset. Indeed, prior to hearing any testimony from petitioner, the judge proclaimed petitioner's case did not rise to the level where consideration of the evidence was necessary. The proclamation is inconsistent with the fair and impartial consideration of evidence by a fair and impartial judge to which petitioner was entitled. A judge's suspicions about a litigant's veracity and beliefs about a litigant's motives can never stand in the stead of a fair process, founded on an impartial consideration of evidence by a fair and impartial judge. See State v. Storm, 141 N.J. 245, 252 (1995) (finding "central to a judicial proceeding is the right to a fair trial before an impartial judge"). The record compels the conclusion petitioner was deprived of that process and impartiality here.

We therefore reverse the orders dismissing the claim petition with and without prejudice and denying petitioner's motion for medical and temporary disability benefits, and remand for further proceedings before a different judge. See, e.g., Entress v. Entress, 376 N.J. Super. 125, 133 (App. Div. 2005) (requiring assignment of a new judge on remand "to avoid the appearance of bias or prejudice based upon the [original] judge's prior involvement with the matter and his expressions of frustration with plaintiff").

On remand, the new judge shall address anew petitioner's motion for medical and temporary disability benefits, any motions filed by respondent, and petitioner's claim petition. Our opinion shall not be considered an expression of an opinion on the merits of any motion or the claim petition.

Reversed and remanded for further proceedings in accordance with this opinion. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-4837-18T2