NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2542-23
A-2543-23

GIUSEPPE AMATO,

     Petitioner-Respondent,

v.

TOWNSHIP OF OCEAN
SCHOOL DISTRICT,

     Respondent-Appellant.

_____

> **APPROVED FOR PUBLICATION**
> **November 25, 2024**
> **APPELLATE DIVISION**

Argued October 17, 2024 – Decided November 25, 2024

Before Judges Rose, DeAlmeida and Puglisi.

On appeal from interlocutory orders of the New Jersey Department of Labor and Workforce Development, Division of Workers' Compensation, Claim Petition No. 2021-19450.

Randolph Brause argued the cause for appellant (Leitner Tort DeFazio & Brause, PC, attorneys; Randolph Brause, on the briefs).

Eugene J. Melody argued the cause for respondent (Martin Melody, LLC, attorneys; Eugene J. Melody, of counsel and on the briefs).

The opinion of the court was delivered by

PUGLISI, J.A.D.

These compensation cases, calendared back-to-back and consolidated for purposes of this opinion, present a novel issue: whether a judge of compensation was required to recuse herself from presiding over a matter involving the application of a statute for which the judge was a sponsor in her prior capacity as a member of the Legislature.

By leave granted, respondent Township of Ocean School District appeals from two orders of the Division of Workers' Compensation: the February 21, 2024 order denying its motion for recusal of the assigned judge of compensation; and the March 14, 2024 order finding decedent[1] was an essential employee during the period of occupational exposure to COVID-19. Having considered respondent's contentions in light of the record and applicable law, we affirm both orders.

Decedent was a full-time teacher in respondent's intermediate school. After ceasing in-person instruction because of the COVID-19 pandemic, the school reopened on February 8, 2021, and decedent returned to work. She became ill and died on May 18, 2021, of respiratory failure as a result of COVID-19.

---

[1] Decedent was petitioner Giuseppe Amato's wife, Denise Amato.

A-2542-23

Petitioner filed a dependency claim with the Division alleging decedent suffered an occupational disease when she contracted COVID-19 during the period of occupational exposure and died as a result of the disease. Respondent answered that decedent's exposure to COVID-19 did not arise out of or in the course of her employment.

Petitioner moved for an order declaring decedent entitled to a presumption she was an essential employee as provided by N.J.S.A. 34:15-31.11 and .12, which respondent opposed. Upon the assigned judge's retirement, the matter was transferred to Judge of Compensation Joann Downey, whom respondent moved to recuse.

I.

We first address whether a judge of compensation is required to recuse herself from presiding over a matter involving the application of a statute for which the judge was a sponsor in her prior capacity as a member of the Legislature. Judge Downey was a member of the New Jersey Assembly from 2016 to 2020. In that role, she was one of eight sponsors of Senate Bill 2380, which was passed by the Legislature on July 30, 2020, and approved by the Governor on September 14, 2020. The bill amended the workers' compensation statute to create a rebuttable presumption that an essential employee's

contraction of COVID-19 during the state of emergency was work-related. See N.J.S.A. 34:15-31.11 and .12.

In denying respondent's motion to recuse, the judge first addressed its contention she prejudged the case. The judge acknowledged that in conferencing with the attorneys, she expressed her opinion of what she believed to be an essential employee. The judge stated her "job" during conferences was to speak frankly with the attorneys and discuss "where [she was] going" based on "the law and the facts that have so far been presented to [her] during those conferences."

The judge then addressed her role as a legislator:

> So, at that time yes, I was a sponsor of this bill which concerns the employment benefits and [COVID-19] infections contracted by essential employees. But being an assembly member on a bill as far as I can see from any of the Rules of Judicial Conduct and including the fact that I tried to look [at] . . . what cases there were available to see if there was any reasoning whatsoever that . . . would make me specifically not permitted to be able to sit in this matter because of any undue prejudice and I know that I don't have any undue prejudice.

The judge then addressed potential bias:

> I have no personal knowledge of the facts, of the actual disputed facts. The only thing that I have knowledge of is the law and the law making—I don't think that's extrajudicial knowledge. I think that's judicial knowledge. It's my understanding basically as

4

a person who's here sitting before you and I'm supposed to interpret the law it's best to know about the law and it's best to be able to read the law and be able to take in all the facts and then apply the facts to the law. That's what I intend to do in this case as I have with any other case I've had before me so far.

On appeal, respondent argues the judge should have granted its recusal motion to avoid the appearance of bias. "[R]ecusal motions are 'entrusted to the sound discretion of the judge and are subject to review for abuse of discretion.'" Goldfarb v. Solimine, 460 N.J. Super. 22, 30 (App. Div. 2019) (quoting State v. McCabe, 201 N.J. 34, 45 (2010)), aff'd as modified and remanded on other grounds, 245 N.J. 326 (2021).

New Jersey court rules do not directly control the actions of workers' compensation judges. Waters v. Island Transp. Corp., 229 N.J. Super. 541, 550 (App. Div. 1989). Nevertheless, the code of conduct for judges of compensation is based on the New Jersey Code of Judicial Conduct. Code of Conduct for Judges of Comp. pmbl., N.J.A.C. 12:235-10 app. Judges of compensation are required to perform their duties impartially and to disqualify themselves in proceedings where "their impartiality or the appearance of their impartiality might reasonably be questioned." Id. r. 3.16(B). The applicable standard as defined in the Compensation Code is whether "a reasonable, fully informed person [would] have doubts about the judge's impartiality." Id. r. 3.16 cmt. 2.

A-2542-23

This standard also refers to DeNike v. Cupo, where our Supreme Court concluded:

> Indeed, as this Court recognized nearly a half century ago, "'justice must satisfy the appearance of justice.'" State v. Deutsch, 34 N.J. 190, 206 (1961) (quoting Offutt v. United States, 348 U.S. 11, 14 (1954)). That standard requires judges to "refrain . . . from sitting in any causes where their objectivity and impartiality may fairly be brought into question." Ibid. In other words, judges must avoid acting in a biased way or in a manner that may be perceived as partial. To demand any less would invite questions about the impartiality of the justice system and thereby "threaten[] the integrity of our judicial process." State v. Tucker, 264 N.J. Super. 549, 554 (App. Div. 1993).
>
> [196 N.J. 502, 514-15 (2008) (alteration in original) (citations reformatted).]

Our decision in Panitch v. Panitch, 339 N.J. Super. 63, 66-67 (App. Div. 2001), provides guidance on how a Superior Court judge should decide a motion for recusal:

> It is improper for a judge to withdraw from a case upon a mere suggestion that he [or she] is disqualified "unless the alleged cause of recusal is known by him [or her] to exist or is shown to be true in fact." Hundred E. Credit Corp. v. Eric Schuster Corp., 212 N.J. Super. 350, 358 (App. Div. 1986). The challenged judge who hears the motion should clearly set forth the "objective and subjective bases for the ultimate decision." Magill v. Casel, 238 N.J. Super. 57, 65 (App. Div. 1990). In construing the analogous federal statute on judicial disqualification, Justice Kennedy stated in a concurring

6

opinion that "[i]f through obduracy, honest mistake, or simple inability to attain self[-]knowledge the judge fails to acknowledge a disqualifying predisposition or circumstance, an appellate court must order recusal no matter what the source." Liteky v. United States, 510 U.S. 540, 563 (1994) (Kennedy, J., concurring). "Litigants ought not have to face a judge where there is reasonable question of impartiality . . . ." Alexander v. Primerica Holdings, Inc., 10 F.3d 155, 162 (3d Cir. 1993).

It is unnecessary to prove actual prejudice on the part of the court, but rather "the mere appearance of bias may require disqualification. . . . However, before the court may be disqualified on the ground of an appearance of bias, the belief that the proceedings were unfair must be objectively reasonable." State v. Marshall, 148 N.J. 89, 279 (1997).

[(Third alteration in original) (citations reformatted).]

We have not directly addressed whether a former legislator who later became a compensation judge may rule on a matter that concerns the application of a statute that the judge sponsored while in the Legislature. However, other jurisdictions have considered this issue with regard to federal judges. For example, in Limeco, Inc. v. Division of Lime, 571 F. Supp. 710, 711 (N.D. Miss. 1983), a federal judge recused himself based on his involvement in a legislative process over forty years earlier because of the appearance of partiality. Eighteen years later, the Sixth Circuit disagreed:

We decline to hold that <u>Limeco</u> correctly states a rule of mandatory recusal and believe the weight of authority to the contrary to be far more persuasive. We hold that a judge who, as a legislator, sponsored or voted for legislation implementing or favoring the death penalty cannot be presumed to be disqualified from reviewing capital cases as a judge. Establishing a rule that a judge must recuse himself in cases involving legislation that had been enacted when a judge served as a legislator would force recusal in an inordinate amount of cases. In addition, it might prevent individuals who are or were legislators from serving as members of the judiciary and from bringing their unique perspectives to the bench. . . .

Moreover, such a rule does not comport with 28 U.S.C. § 455(a), which states that a judge "shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned." This rule requires a fact-specific analysis of the judge's prior activity, legislative or otherwise, to determine if disqualification is required.

[<u>Buell v. Mitchell</u>, 274 F.3d 337, 347 (6th Cir. 2001).]

In his concurring opinion in <u>Liteky</u>, 510 U.S. at 557-58, Justice Kennedy described the basis for a federal judge to grant a motion for recusal:

Section 455(a) provides that a judge "shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned." For present purposes, it should suffice to say that § 455(a) is triggered by an attitude or state of mind so resistant to fair and dispassionate inquiry as to cause a party, the public, or a reviewing court to have reasonable grounds to question the neutral and objective character of a judge's rulings or findings. I think all would agree that

8

> a high threshold is required to satisfy this standard. Thus, under § 455(a), a judge should be disqualified only if it appears that he or she harbors an aversion, hostility or disposition of a kind that a fair-minded person could not set aside when judging the dispute.

We agree with this approach here. A compensation judge who formerly sponsored a bill enacted into law is not per se disqualified from presiding over cases implicating or interpreting that law. "A judge ordinarily is not disqualifiable because of his [or her] own life experiences." Johnson v. Salem Corp., 189 N.J. Super. 50, 60 (App. Div. 1983). "[E]ach of us is a product of the aggregate of our experiences, and our understanding is enhanced by the totality of our experiences." Id. at 60-61. Thus, a judge's personal knowledge of or experience with certain legislative history does not necessarily render the judge biased or unable to make a fair judgment in the matter.

Rather, the judge must determine whether a reasonable person would doubt the judge's impartiality, given the judge's prior involvement in the legislative proceedings and the issues and facts presented in the case before the judge. We are satisfied that Judge Downey did not abuse her discretion in deciding a recusal was unwarranted in this case. Her knowledge of the law and lawmaking was not extrajudicial knowledge but rather judicial knowledge that many judges take with them to the bench. In addition, her comments during

conferences were based on her application of the statute, as it was enacted, to the facts presented to her at that time.

Respondent also argues that the judge, as a former sponsor of the bill, could be called as a witness and therefore should not have decided the matter. We are unpersuaded by this speculative contention. While a court may look to legislative history, including the sponsors' statements, to shed light on an ambiguous statute, individual legislators are typically not subject to examination as to how they personally interpreted the statute. That is because we are not interested in the statement of one legislator as to what he or she believed was the correct interpretation of a statute. See DiProsporo v. Penn, 183 N.J. 477, 499 (2005).

## II.

We next turn to respondent's appeal of the order declaring decedent an essential employee. "Appellate review of workers' compensation cases is 'limited to whether the findings made could have been reached on sufficient credible evidence present in the record . . . with due regard also to the agency's expertise[.]'" Hersh v. Cnty. of Morris, 217 N.J. 236, 242 (2014) (alteration in original) (quoting Sager v. O.A. Peterson Constr., Co., 182 N.J. 156, 163-64

(2004)).  "Nonetheless, the judge of compensation's legal findings are not entitled to any deference and, thus, are reviewed de novo."  Id. at 243.

Petitioner's motion sought an order declaring decedent an essential employee.  N.J.S.A. 34:15-31.11 (emphasis added) defines an essential employee as

> an employee in the public or private sector who, during a state of emergency:
>
> (1) is a public safety worker or first responder, including any fire, police or other emergency responders;
>
> (2) is involved in providing medical and other healthcare services, emergency transportation, social services, and other care services, including services provided in health care facilities, residential facilities, or homes;
>
> (3) performs functions which involve physical proximity to members of the public and are essential to the public's health, safety, and welfare, including transportation services, hotel and other residential services, financial services, and the production, preparation, storage, sale, and distribution of essential goods such as food, beverages, medicine, fuel, and supplies for conducting essential business and work at home; or
>
> (4) is any other employee deemed an essential employee by the public authority declaring the state of emergency.

An employee who is an employee of the State who is offered the option of working at home but has refused that option shall not be regarded as an essential employee.

Petitioner sought the order because essential employees who contracted COVID-19 are entitled to "a rebuttable presumption that the contraction of the disease is work-related and fully compensable for the purposes of benefits provided under [N.J.S.A.] 34:15-1 [to -6], ordinary and accidental disability retirement, and any other benefits provided by law to individuals suffering injury or illness through the course of their employment." N.J.S.A. 34:15-31.12. The "presumption may be rebutted by a preponderance of the evidence showing that the worker was not exposed to the disease while working in the place of employment other than the individual's own residence." Ibid.

In determining decedent was an essential employee, the judge found the following facts. On March 9, 2020, Governor Murphy issued Executive Order (EO) 103, declaring a public health emergency and state of emergency in New Jersey as a result of the COVID-19 pandemic. Exec. Order No. 103 (Mar. 9, 2020), 52 N.J.R. 549(a) (Apr. 6, 2020). EO 103 authorized the State Office of Emergency Management (OEM), in conjunction with the New Jersey Department of Health (DOH), to take any actions necessary to protect the health and welfare of New Jersey citizens. Ibid.

On March 16, 2020, the Governor issued EO 104, closing all schools in New Jersey. Exec. Order No. 104 (Mar. 16, 2020), 52 N.J.R. 550(a) (Apr. 6, 2020). On August 13, 2020, the Governor signed EO 175, which superseded the prior EOs requiring schools to remain closed and allowed schools to reopen for in-person instruction subject to health and safety protocols. Exec. Order No. 175 (Aug. 13, 2020), 52 N.J.R. 1699(a) (Sept. 21, 2020).

In response to the COVID-19 pandemic, the Cybersecurity and Infrastructure Security Agency (CISA), an agency of the United States Department of Homeland Security, issued guidance as to who should be considered essential employees; kindergarten through twelfth grade teachers were included in the list. CISA, Guidance on the Essential Critical Infrastructure Workforce: Ensuring Community and National Resilience in COVID-19 Response 10 (version 4.0 Aug. 18, 2020). CISA's essential employee guidelines were adopted by OEM. Essential Employees, OEM, https://nj.gov/njoem/programs/essential-employees.shtml (last visited Nov. 18, 2024).[2]

---

[2] The version of OEM's website published at the time of the judge's decision referred to version 4.0 of CISA's guidance, which was in effect at the time decedent returned to work. The current version of OEM's website refers to version 4.1 of CISA's guidance.

In addition, on October 16, 2020, DOH promulgated a COVID-19 vaccination plan which identified "education and child-care workers" as essential employees. N.J. Dept of Health, COVID-19 Vaccination Plan 43 (version 1 Oct. 16, 2020). On June 4, 2021, Governor Murphy signed EO 244 ending the COVID-19 public health emergency. Exec. Order No. 244 (June 4, 2021), 53 N.J.R. 1131(a) (July 6, 2021).

Based on the foregoing, the judge found decedent, as a teacher in public middle school, was an essential employee.

Respondent argues the judge erred because there were genuine issues of material facts as to whether teachers should be considered essential employees pursuant to N.J.S.A. 34:15-31.11 because the statute does not specifically or implicitly include them. Respondent points out that at the time of its enactment, New Jersey schools were closed and learning occurred virtually.

We disagree with this narrow reading of the statute because it ignores section (4), which extends the definition of essential employees to include "any other employee deemed an essential employee by the public authority declaring the state of emergency." Thus, even if the statute did not identify teachers as essential employees, it nevertheless encompassed any other employee the governing authority deemed essential. Teachers were deemed essential

employees through the Governor's delegation of the responsibility to protect the public to OEM, and OEM's adoption of CISA's list of essential employees, which included teachers.

This determination is further buttressed by EO 175, which permitted the reopening of schools because "in-person instruction provides students with academic, social, emotional, and mental health supports that cannot be provided with the same level of efficacy in a remote setting" and "is critical in facilitating the social and emotional health of students." Exec. Order No. 175, 52 N.J.R. at 1699. As a result of EO 175, schools reopened while there was still a public health emergency in place.

Respondent further argues that the judge erred because there is no provision for summary decisions in workers' compensation court, yet she summarily found decedent was an essential employee based on "nothing but [the judge's] personal beliefs" regarding the statute. According to respondent, petitioner's motion lacked any competent evidentiary materials, because he provided no evidence or affidavits other than his attorney's certification, which included conclusory arguments. Respondent also contends petitioner did not provide a statement of material facts, a requirement for summary decisions

according to Rule 4:46-2(a) and Brill v. Guardian Life Insurance Co. of America, 142 N.J. 520 (1995).

We are unpersuaded by respondent's arguments. Petitioner sought a declaratory judgment as to a limited aspect of the matter. A party to a workers' compensation dispute may obtain "a declaration of rights" pursuant to the Declaratory Judgment Act (DJA), N.J.S.A. 2A:16-50 to -62. See Weir v. Mkt. Transition Facility of N.J., 318 N.J. Super. 436, 442-43 (App. Div. 1999). N.J.S.A. 2A:16-53 permits a person to seek a "declaration of rights, status or other legal relations" when that person's rights or status are affected by a statute. "A declaratory action . . . is proper provided there is a justiciable controversy, the party claiming the relief has standing, and there are no adequate or appropriate alternative remedies." Lab. Ready Ne., Inc. v. Dir., Div. of Tax'n, 25 N.J. Tax 607, 612 (Tax 2011) (citing Registrar & Transfer Co. v. Dir., Div. of Tax'n, 157 N.J. Super. 532, 538-43 (Ch. Div. 1978)).

Personal affidavits were not necessary to decide whether decedent was an essential employee because there was no disagreement she was a full-time teacher in respondent's school district and the issue was not determined on facts specific to decedent. In addition, Rule 4:46-2(a) permits, but does not require, the court to dismiss a motion for summary judgment for failure to file a

16

statement of material facts. Because the judge's decision here turned on statutory interpretation and analysis of public documents, the lack of a statement of material facts was not fatal to the application and the judge did not abuse her discretion in considering the application absent the statement.

Lastly, we note the presumption under N.J.S.A. 34:15-31.12 that an essential employee's "contraction of the disease [was] work-related and fully compensable" is rebuttable. Thus, notwithstanding the judge's declaratory finding that decedent was an essential employee, respondent may introduce evidence to rebut the presumption that decedent's contraction of COVID-19 was work-related.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

17